# L. F. WILBUR v. CYRUS PRIOR.

## January Term, 1893.

*Note procured by fraud. Promise not to collect. Fraud without injury:*

1. While a promise by the payee at the time of obtaining a promissory note not to enforce it, cannot be shown in defence to a suit on the note, it may be shown that the note was obtained by fraudulent representations of which the statement that it should be returned to the maker before maturity was one.

2. *Held*, that the evidence tended to show such fraudulent representations.

3. The defendant was surety on the bond of a town constable who had made default in the service of process. The plaintiff, as the attorney of the party damaged by such default, fraudulently induced the defendant to give the note in suit for the amount of the default. *Held*, that it could not be affirmed as matter of law that the defendant was not injured by the fraud, for his liability as bondsman might never have been established against him.

Assumpsit upon a promissory note. Plea, the general issue with notice of special matter. Trial by jury at the April term, 1892, Chittenden county, Taft, J., presiding. The court directed a verdict for the plaintiff; to which the defendant excepted. The opinion states the case.

*Henry Ballard* and *J. J. Monahan* for the defendant.

*L. F. Wilbur, S. Haselton* and *W. L. Burnap* for the plaintiff.

A contemporaneous agreement not to collect the note could not be shown. *Conner* v. *Carpenter*, 28 Vt. 237 and note ; *Morse* v. *Low*, 44 Vt. 561 ; *Gillett* v. *Ballou*, 29 Vt. 296.

MUNSON, J. The defendant conceded the execution of the note in suit, but claimed that it was without consideration and procured by fraud. The court directed a verdict on the ground that there was no evidence tending to show that the note was fraudulently procured, and the defendant excepted to the action of the court in directing a verdict. In considering the correctness of this ruling we are to assume the truth of that part of the testimony which tends to support the defendant's claim.

The defendant was one of three sureties on E. D. Butler's bond as constable of Underhill for the year 1882. During that year Butler served a writ in favor of William Early against Michael Stokes by attaching certain personal property, a part of which was sold as perishable and a part by agreement of the parties. Both parties were present at the sale with their attorneys, Wilbur being the attorney of Stokes. A part of the property was bid off by Early and a part by Wilbur, and by agreement of all concerned the funds were left in the hands of the bidders to await the determination of the suit. The suit was terminated in 1886, by a judgment in favor of Stokes. Butler left the state in 1884, and had no further knowledge of the suit until 1888, when he was informed by Wilbur that a judgment had been obtained by Stokes, and that he had sued the town because of its constable's failure to account for the avails of the sale.

The defendant in this suit had no knowledge of these matters until Wilbur wrote him in regard to them. In his letter Wilbur informed defendant that he had a claim to enforce against Underhill for the default of its constable, that he understood defendant was one of the constable's bondsmen, and that he thought he knew a way by which

defendant could save himself, of which he would inform him if he would meet him at a time and place named. At an interview brought about by this suggestion, Wilbur told the defendant that he was about to bring a suit for Stokes against the town on account of Butler's default, that defendant would be liable as one of the bail, and that he thought he could help him out of it; that if he would sign a note for the amount of the claim he would get a power of attorney from Butler to collect the money due from Early, and would obtain payment in that way. The defendant refused to give his note, and Wilbur afterwards visited his house several times and urged him to do so. On the last of these visits Wilbur told him he had got Butler's authority to collect the money of Early, that he wanted to have defendant's note to show the town that the suit pending against it had been settled, and that after the suit was disposed of he would collect the money of Early, and then return the note to defendant. The defendant again refused to give his note, but at Wilbur's request agreed to meet him at a hotel the next morning. At their interview in the morning Wilbur told the defendant that the giving of the note should not cost him a cent, that he would collect the money of Early at his own expense, and would return the note to defendant when due or before. The defendant then gave the note in suit, influenced as he says by the representations of the plaintiff.

This was four days before the return day in the suit of Stokes against the town. According to defendant's testimony, Wilbur always urged upon defendant that he say nothing to any one about the matter, and in consequence of this defendant made no inquiries and knew nothing except what Wilbur told him. The town considered that it had a good defence to the suit, and was preparing to contest it. At their interview at the hotel Wilbur produced an assignment from Butler to the defendant of the claim against Early, which defendant then refused to take, but retained

when afterwards sent him by mail.   At Wilbur's suggestion
defendant procured one Woodworth to see Early and notify
him of the assignment, and in a subsequent settlement de-
fendant paid Woodworth for this service.  Stokes was owing
Wilbur a considerable amount for legal services, and what-
ever was obtained on this claim was going to Wilbur.   It
does not appear that after this note was given either Wilbur
or the defendant did anything as regards Early's liability.

Upon this review of the testimony favorable to the defend-
ant, we think it must be held that there was evidence tending
to show that the plaintiff had doubts as to the liability of the
town, and wished to get the claim satisfied in some way
without incurring the publicity or uncertainty of a trial; and
that he procured this note by falsely representing that it
was to be used only for the defendant's protection and in the
manner specified, and would afterwards be returned to him.
This tendency of the defendant's testimony is not overcome
by his statements that an assignment of the demand against
Early was taken in his name and remained in his hands,
and that the notice to Early was given by his direction and
at his expense.   The assignment to the defendant, if defend-
ant's version is adopted, was what Wilbur's plan contem-
plated.   His whole talk was that everything must be done
in the defendant's name, the same as if the defalcation was
being satisfied by defendant in reality as well as in appear-
ance.   The jury might believe the defendant's account of
the transaction, notwithstanding the fact that he suffered the
assignment to remain in his possession when mailed to him
by Wilbur, and notwithstanding the fact that in a general
settlement afterwards had with Woodworth he suffered
Woodworth's charge for giving the notice to stand without
question.

We think the representations which this evidence tended
to establish were such as would avoid the note.   If the only
tendency of the testimony was to show a promise not to en-

force the note, it would be of no avail.  But the maker of a note delivered upon such a promise is not barred by the rule applicable to the promise from showing that the note was procured by deceitful practices of which the promise was a part. This view is not at variance with the decisions in *Gillett* v. *Ballou*, 29 Vt. 296, and *Conner* v. *Carpenter*, 28 Vt. 237. Neither of these cases involved the question of fraud in the procurement of the writing.  In the latter case the plaintiff gave the defendant a writing which the plaintiff offered to show was understood to be a sham, and designed merely to deter the plaintiff's creditors from attaching his property ; and the offer was disposed of as an attempt to contradict the writing.  But we take it the ruling would have been different if evidence had been offered which tended to show that the defendant had conceived the idea of taking advantage of the plaintiff's situation to obtain a writing for ultimate enforcement, and had approached him with that design in his mind and words of disinterested friendship in his mouth, and had worked upon his fears regarding his financial condition, and then obtained the paper upon a promise not to use it.  It cannot be said but that if all the evidence favorable to the defendant were believed, the jury might legally have drawn corresponding inferences in this case.  And there being evidence tending to show that an imposition of this character was practiced on the defendant, it is not necessary to find evidence tending to show the plaintiff guilty of a material misrepresentation or concealment in regard to the defendant's situation.  The facts of an existing situation may be correctly stated, and yet be made the basis of a cognizable fraud.  The scope of the plaintiff's representation was broader than the question of the defendant's liability.  The evidence tended to show that he obtained the note by falsely pretending that he had devised a plan for the defendant's protection, and that his possession of the defendant's note was essential to the carrying out of his plan.  It tended to

show a statement that the note was to be used only for a specified purpose, and a contemporaneous intention to use it for an entirely different purpose.

But it is insisted that the defendant has merely given his note for his own obligation, and consequently has suffered no damage. Assuming that the constable was in default, and that Stokes and Wilbur were not estopped from asserting it, and that the town was legally holden, and that the loss was chargeable to the year for which the defendant was surety, can it be said that the defendant has sustained no injury? We think not. Even though the town was liable and the bond chargeable with the loss, the defendant may have suffered by conceding his liability when he did. If the proceedings had been allowed to take their course they might never have reached the defendant. Stokes might have abandoned his suit upon becoming satisfied that the town intended a vigorous defence. If judgment had been obtained against the town, and the constable had become satisfied that nothing could be got from Early, he might have raised the money to protect his bondsmen. If the town had had the money to pay, it might never have sued the bond. If it had decided to sue, it might have proceeded against the other sureties, and the defendant have ultimately escaped. If the defendant had considered that a suit against him was certain, he might have preferred to wait in the expectation that all the sureties would be sued jointly. The defendant had a right to the benefit of these contingencies, if he preferred to take the chances of delay rather than concede a liability and make immediate payment. The fact that a suit had been brought upon an enforceable claim on which the defendant could ultimately be made liable affords no ground for saying that he was not harmed by the representations relied upon. Whatever the situation of the defendant may have been, he was under no obligation to give his note.

We are not called upon to consider what chance this evidence had of being believed by the jury when viewed in connection with the testimony of the plaintiff. The question for us is whether there was any evidence which tended to show that the note in suit was fraudulently procured.

*Judgment reversed and cause remanded.*