HARPONOLA COMPANY *v.* GEORGE H. WILSON.

February Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 2, 1923.

*Bills and Notes—Defenses of Fraud and Lack of Consideration —Presumptions—Burden on Defendant to Establish Lack or Failure of Consideration—Sales—Fraud Not Waived As Matter · of Law—Representations Concerning Value— Whether Fraud Intended Usually for the Jury—Right to Rely on Representations of Value When Opportunity to In-spect Property Purchased—Reliance on Fraudulent Repre-sentations May Be Inferred From Circumstances—When Evidence of Broken Promises May Be Considered on Ques-tion of Fraud—Holder in Due Course—Who Has Burden of Establishing—What Shows Bad Faith in Holder—When Question of Good Faith for The Jury.*

1. Under the Negotiable Instruments Act, § 58 (G. L. 2927), fraud in the inception of a negotiable instrument, or absence or failure of consideration, such as would defeat a recovery be-tween the immediate parties, is available as a defense when the plaintiff is not a holder in due course.

2. Under the Negotiable Instruments Act, §§ 24 and 59 (G. L. 2894 and 2928), the plaintiff, who was the holder of a note properly indorsed, could rely on the *prima facie* case thereby made because of the presumptions that he was a holder in due course and that the note was issued for a valuable consideration, until the defendant adduced evidence of fraud or absence and failure of consideration sufficient for the consideration of the jury.

3. Under the Negotiable Instruments Act, § 28 (G. L. 2898), the burden is on defendant, not only of introducing some evidence of lack or failure of consideration, but of ultimately establishing the issue by a preponderance of evidence.

4. In an action on a negotiable note against the maker, where the defendant's evidence tended to show that the payee of the note given for certain phonographs was engaged in the business of swindling merchants and that the note in suit was obtained through a general scheme to defraud the defendant and others, essential elements for the success of which were misrepresentations as to the value of the phonographs and attractive promises as to future aid in selling them, the court erred in directing a verdict for the plaintiff on the theory that the original fraud in procuring the contract of purchase of the phonographs was waived by an adjustment reached when the note was given, and that, as a matter of law, the misrepresentations made as to the value of the phonographs and the agreements relating to matters to be performed in the future were not fraudulent.

5. Representations respecting value, standing alone, may or may not be fraudulent, depending upon the circumstances of the particular case.

6. Whether fraud was intended is usually, though not always, a question of fact for the jury.

7. Where the defendant was tricked into signing a contract for the purchase of certain phonographs, never having previously dealt in them or owned one, and thereafter, by false representations, including those relating to the value of the phonographs, he was induced to pay part of the purchase price in cash and to give his note for the balance, all being part of a general scheme to defraud the defendant and others, it cannot be ruled as a matter of law that he did not have the right

to rely on the representations as to value, notwithstanding he had ample opportunity to inspect the machines and determine their value and failed to do so.

8. Reliance upon fraudulent representations need not be proved by direct evidence, but may be inferred from the circumstances.

9. While a promise, standing alone, does not afford the basis of actionable fraud, it is not improper to consider broken promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme.

10. In an action on a negotiable instrument, where the defendant adduces evidence sufficient for the consideration of the jury, tending to show fraud in the inception of the instrument sued on, the burden of proving the conditions establishing the status of a holder in due course under the Negotiable Instruments Act is cast upon the plaintiff, who must then disclose the facts and circumstances attending the transfer of the instrument, from which good or bad faith may be inferred.

11. To show knowledge of such facts that the taking would amount to bad faith, it is not necessary that the holder should know the exact fraud practiced upon the defendant, but the defense of fraud is available if the facts within his knowledge tend to show there was something wrong with the transaction.

12. The question of good faith necessary to constitute a holder in due course is one of fact for the jury, unless the evidence of good faith is undisputed and not only consistent therewith but so conclusive that fair-minded men could draw no different inferences.

13. Under the evidence, *held* that it could not properly be ruled as a matter of law that the plaintiff was a holder in due course, hence that it was error to direct a verdict in his favor.

ACTION OF CONTRACT on a promissory note. Pleas, fraud in procuring the note, and failure of consideration. Trial by jury at the June Term, 1922, Caledonia County, *Moulton, J.,* presiding. At the close of all the evidence the court directed a verdict for the plaintiff and judgment was rendered therefor. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*Sumner E. Darling, Jr.,* for the defendant.

*Shields & Conant* for the plaintiff.

TAYLOR, J.   The action is on a promissory note given by the defendant to one L. W. Watson, a member of the Peerless Talking Machine Company, so-called, payable to P. J. Stover, another member of the company, or his order, and indorsed by the latter to the plaintiff before maturity.   The defendant filed an answer setting up fraud in procuring the note and failure of consideration.   The trial was by jury.   At the close of the evidence the court directed a verdict for the plaintiff, to which the defendant was allowed an exception.   An exception was also saved to the judgment on the verdict.   Other exceptions were taken by the defendant during the trial, but are waived by failure to brief.

The plaintiff is a corporation engaged in the manufacture of phonographs with its principal office and place of business at Celina, Ohio.   The defendant is a merchant in business at Hardwick, Vermont.   The plaintiff markets phonographs manufactured by it through jobbers and dealers.   Some time in June, 1920, it entered into business arrangements with individuals who styled themselves Peerless Talking Machine Company and represented their headquarters to be in Chicago, Ill.   Among the number were L. W. Watson and P. J. Stover, who figured principally in the transactions presently to be noticed.

As the first ground of the motion for a directed verdict the plaintiff claimed that the defendant had failed to make out the defense of fraud in procuring the note.   Whether the evidence was sufficient to take this question to the jury is first for consideration.   In detailing the evidence we shall state what it fairly tended to show in the view most favorable to the defendant.

·July 7, 1921, the defendant was interviewed by a representative of the Peerless Talking Machine Company, hereinafter referred to as the Peerless Company.   Prior to that time the defendant had not dealt in phonographs and had never owned one. This representative solicited the defendant to act as an agent of the Peerless Company for the sale of phonographs on commission.   It was proposed to ship the defendant certain phonographs on consignment, the same to remain the property of the

Peerless Company until sold; that he was to be under no re-
sponsibility, but was to act as an agent and receive a commission
of 25 per cent. for doing the business; that the company would
send out advertising matter to persons whose names were to be
furnished by the defendant and would send men around to
canvass from house to house to sell machines; that the company
would furnish records which the defendant was to sell on a 40
per cent. commission. Cuts representing the style of the phono-
graphs were shown and the defendant was told that they were as
good as the "Victor." The selling price of the machines was
to be $210. In the course of the negotiations a proposed agency
contract was shown the defendant which he read and handed
back to the agent. Its provisions conformed to the proposals
stated above. The defendant was tricked by the agent into
signing an agreement of an entirely different tenor which he had
not read. It purported to be an agency agreement such as had
been proposed, but it contained an order for "four sample
cabinet imperial talking machines of $157.50 quality," and a
promise to pay the Peerless Company, or order, therefor the
sum of $630 on demand. The contract signed was so worded
as to confine the agency agreement, including the non-liability
clause, to machines "shipped upon future orders." The de-
fendant asked for a copy of the contract but was put off with
the promise that it would be furnished later. He was told to
store the machines when they arrived and wait until the men
came who were to be sent to make the canvass. The machines
came sometime in August and were not uncrated but were stored
as directed. September 10, 1921, Watson called on the defend-
ant and presented a bill for the four machines. The latter in-
sisted that he had not bought any machines, whereupon Watson
produced the contract signed by the defendant. In response to
the defendant's protest that a trick had been played upon him,
Watson said he was glad to know that, but still insisted upon
payment. As an inducement, he proposed to accept a payment
of $330 and a note for the balance and to take back all machines
not sold at the end of a year. To assure the defendant that he
would not "lose" anything by the transaction and to make it
"safe" for him, Watson indorsed on the back of the contract an
agreement to refund $157.50 for each machine not sold at the
expiration of one year from the date of the contract. The ma-

chines had not then been opened up so that they could be examined. Watson told the defendant, "the boys will be here in about two weeks to take the machines out and sell them for you;" and that they were to advertise with banners and posters. Finally, the defendant was persuaded to give Watson a check for $330 and the note in suit for $300, payable thirty days after date. From that time forward the defendant was unable to get any communication from the Peerless Company. The promised advertising material was not sent, the men who were to take the machines out and conduct a selling campaign did not show up, and the defendant could get no response to letters written the company. After a while he uncrated the machines and offered them for sale, but without success. They were found to be of inferior quality and not salable at the price named in the agency agreement. A fair price to dealers was about what the defendant paid in cash. It was represented to the defendant that the Peerless Company were manufacturers of phonographs with their home office at Celina, Ohio, and the crates containing the machines shipped the defendant were marked:

From

Peerless Talking Machine Co.
Manufacturers of
Phonographs

Celina                                        Ohio

They were not such and had no place of business in Celina, Ohio, nor elsewhere, so far as was known to the manager of the plaintiff who had had intimate business relations with the men calling themselves the Peerless Company for more than a year. They had a mail box at the Celina postoffice where mail was received, of which the plaintiff's manager had the combination. He was accustomed to remove the mail and hold it until called for or to forward to different places as directed.

[1-3]    Section 58 of the Negotiable Instruments Act (G. L. 2927) provides that a negotiable instrument in the hands of any holder other than a holder in due course is subject to the same defenses as if it were non-negotiable. It follows that fraud in the inception of a negotiable instrument, or absence or failure of consideration, such as would defeat a recovery thereon between the immediate parties, is available as a defense when the plaintiff is not a holder in due course. So the inquiry on this branch

of the case is whether the evidence would support such a defense
if the Peerless Company were the plaintiff. Manifestly the bur-
den of establishing the defenses of fraud and failure of consid-
eration is upon the defendant. Unless he has adduced evidence
sufficient for the consideration of the jury on one or both of
these issues, the plaintiff could safely rely on the *prima facie*
case made by the note- properly indorsed. It is presumed to be
a holder in due course, as defined in Section 52 of the Act (G. L.
2921), and the note is deemed *prima facie* to have been issued
for a valuable consideration. Section 24 of the Act (G. L.
2894). Some courts have held that although the production of
the note is *prima facie* evidence of consideration, if the defend-
ant gives evidence tending to show want of consideration, the
plaintiff has the ultimate burden upon the whole evidence of
showing that there was consideration. The courts so holding
make no reference to section 28 of the Act (G. L. 2898) and
seem to have overlooked its effect. It provides: "Absence or
failure of consideration is matter of defense as against any per-
son not a holder in due course; and partial failure of considera-
tion is a defense *pro tanto* whether the failure is an ascertained
and liquidated amount or otherwise." It seems clear that under
the Negotiable Instruments Act the burden is cast upon the de-
fendant, not only of introducing some evidence of lack or failure
of consideration, but of ultimately establishing the issue by a
preponderance of evidence. Williston on Con. § 108; Brannon
on Neg. Ints. Law, 91-98, where the cases are reviewed.

[4] It will be noticed that the motion for a verdict left
out of account the defense of failure of consideration. However,
the court treated the question as raised in disposing of the mo-
tion. The plaintiff made no claim but that the evidence showed
actionable fraud in procuring the so-called agency agreement,
but insisted that the original fraud was waived by the adjust-
ment reached at the time the note was given. Respecting the
representations made by Watson as to the value of the phono-
graphs and his agreements relating to matters to be performed
in the future, it was claimed that they were not fraudulent in
law. The court adopted the plaintiff's theory in granting the
motion. But this was not a sufficient answer to the case made
by the defendant's evidence. He claimed, and his evidence
fairly tended to show, that the Peerless Company was engaged

in the business of swindling merchants, and that the note was obtained through a general scheme to defraud the defendant and others, for the success of which misrepresentation as to the value of the phonographs and attractive promises looking to the future were essential elements. There was evidence of practically identical transactions with other merchants in the vicinity indicating unmistakably a deliberate plan to defraud the victims of the scheme. The same representations, the same promises, the same proposal of compromise, and, so far as the scheme worked, the same result runs through all the evidence. Cash more than sufficient to cover the actual value of the phonographs was received; the victims were lulled into a feeling of security by promises never intended to be kept; and negotiable notes for the balance of the fictitious value placed on the phonographs were secured with the evident purpose of realizing thereon before the fraud should be discovered, or in such a way as to cut off any defense.

[5-7]   It is claimed that the representations as to value should be regarded as matter of opinion, puffing, or mere trade talk and not as fraudulent. Representations respecting value, standing alone, may or may not be fraudulent, depending upon the circumstances of the particular case; so whether fraud was intended is usually, though not always, a question for the jury. *Belka* v. *Allen,* 82 Vt. 456, 462, 74 Atl. 91; *Crompton* v. *Beedle,* 83 Vt. 287, 298, 75 Atl. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912A, 399; *Arnold* v. *Somers,* 92 Vt. 512, 520, 105 Atl. 260. It is said that the defendant had ample opportunity to inspect the machines to determine for himself their value and having failed to do so he should not be heard to complain respecting such representation. It is made clear by our decisions that in the circumstances shown the question cannot be ruled against the defendant as matter of law. *Crompton* v. *Beedle, supra; Maidment* v. *Frazier,* 90 Vt. 520, 527, 98 Atl. 987; *Ste. Marie* v. *Wells,* 93 Vt. 398, 404, 108 Atl. 270.

[8, 9]   The point is made that the defendant did not testify that he relied upon the representations. We held in the case last cited that this need not be proved by direct evidence but may be inferred from the circumstances. We hold that the evidence was sufficient to take the question of reliance to the jury. It is urged that fraud cannot be predicated upon failure to keep

promises of something to be done in the future. While the general rule is that fraud cannot be based upon statements promissory in their nature and relating to future action, it is held in some jurisdictions that the making of a promise with deceitful purpose and a present intention not to fulfill it will avoid the contract. Other courts including our own hold that a promise so made, standing alone, does not afford the basis of actionable fraud. *Girard* v. *Jerry,* 95 Vt. 129, 113 Atl. 533; *Hunt* v. *Lewis,* 87 Vt. 528, 90 Atl. 578, Ann. Cas. 1916C, 170, and other cases there cited. But, as seen, this is not a case where the action or defense rests solely upon an unfulfilled promise. The evidence fairly tended to show that the scheme to defraud the defendant contemplated from the outset the procuring of the note as part of its fruitage. The promises were steps in a series of actions constituting the scheme and were a most apt and effectual means of accomplishing the fraud. We are not aware that it is anywhere held in such circumstances that it is improper to consider the broken promises. The case comes within a well recognized exception to the general rule to which reference is made in *Adams* v. *Soule,* 33 Vt. 538, 544, and is essentially like *Wilbur* v. *Prior,* 67 Vt. 508, 32 Atl. 474. In the latter case the defendant was induced by the plaintiff's misrepresentations to give the note in suit, it being agreed that the note was not to be enforced but when it had served the purpose for which it was given the plaintiff would return it to the defendant. It was held that in the circumstances the defendant was not barred from showing that the note was procured by deceitful practices of which the promise was a part. See also *Murray* v. *Tolman,* 162 Ill. 417, 44 N. E. 748; *Ayres* v. *French,* 41 Conn. 142; *Goodwin* v. *Horne,* 60 N. H. 485; *Chicago, etc., R. Co.* v. *Titterington,* 84 Tex. 218, 19 S. W. 472, 31 A. S. R. 39; *Horowitz* v. *Kuehl,* 117 Wash. 16, 200 Pac. 570; 12 R. C. L. 257; note 10 L. R. A. (N. S.), 640. Cooley on Torts (3rd ed.) 929. In the circumstances it could not be said as a matter of law that the original fraud was waived and that the representations and promises made when the note was procured were to be disregarded. The evidence made it a question for the jury whether the note was procured through fraud or otherwise.

[10-12] The remaining ground of the motion for a directed verdict presented the question whether on the evidence

the plaintiff was a holder in due course. The court held in effect that the plaintiff took the note for value in the ordinary course of business without anything to charge it with knowledge of any failure of consideration or any fraud in its inception. · The plaintiff recognizes that on this branch of the case it has the burden, but seems to have overlooked the effect of the rule when undertaking to sustain the action of the court in directing a verdict in its favor. So far as concerns the question under consideration the case is controlled by *Howard Natl. Bank* v. *Wilson,* 96 Vt. 438, 120 Atl. 889. It was there held that, when the defendant comes forward with evidence sufficient for the consideration of the jury tending to show fraud in the inception of the instrument sued on, the burden of proving the conditions establishing the status of a holder in due course under the Negotiable Instruments Act is cast upon the plaintiff; that it then devolves upon him to disclose the facts and circumstances attending the transfer of the instrument, from which good or bad faith in the transaction may be inferred; that, to show knowledge of such facts that the taking would amount to bad faith, it is not necessary that the holder should know the exact fraud practiced upon the defendant, but the defense of fraud is available if the facts within his knowledge tend to show there was something wrong with the transaction; and that the question is one of fact for the jury, unless the evidence of good faith is undisputed and is not only consistent therewith but is so conclusive that fair-minded men could draw no different inference.

[13]   The evidence bearing on this phase of the case is found in the depositions of H. J. Beam of Celina, Ohio, the secretary and manager of the plaintiff. It is unnecessary to give the testimony of the witness in detail. Only those portions that bear on the question of good faith are of special importance here. Beam acted for the plaintiff in all transactions with the persons composing the Peerless Company including the taking of the note. He testified that the plaintiff took the note in good faith and for value, and that when it was negotiated no one interested in the plaintiff had notice of any infirmity in the instrument or defect of the title of P. J. Stover, who negotiated it. In June, 1920, a verbal arrangement was entered into with the Peerless Company to make 1,000 talking machines for them at the price of $50 or $60, depending upon the size of the machine. The

machines were manufactured specially for the Peerless Company and were inferior in quality to those the plaintiff was accustomed to manufacture. They were shipped by the plaintiff direct to the customers of the Peerless Company and charged to the latter. The original agreement called for a cash payment, but subsequently a limited credit was extended. Payment was sometimes made in cash and sometimes by check, by certified checks of customers, and by customers' notes. Name plates bearing the statement "Peerless Means Perfect, Manufactured by Peerless Talking Machine Company" were attached to the machines. Beam testified that their use did not excite suspicion of fraud, as it was the practice of several of their customers to use similar name plates. He knew when the note was taken that the Peerless Company was nothing but a selling concern and had no place of business in Celina or elsewhere that they were willing to disclose; that they represented to prospective customers that they had an office and place of business in Celina; and that some of their customers were "highly dissatisfied" with their business dealings. He had heard that they had made a good many promises to customers that they did not live up to, but considered that it was none of his business. Relative to their manner of conducting business, he had heard that they agreed to furnish printed matter to dealers and to furnish them aid in selling the machines, which they did not do. No investigation as to the moral standing or general reputation of the people claiming to be the Peerless Company nor as to their business methods was made, though the plaintiff took notes aggregating $15,000 or $20,000. Beam testified "all we had in mind was to get the cash with the order." He tried to find out how they were selling machines, but they "were very careful not to tell." Asked, "Would they explain to you the methods they were using in disposing of the machines?" he answered, "No, they would keep that away from me." They told him they were getting $157.50 for the machines, which was an excessive price to dealers. None of the business was conducted by correspondence, but Beam frequently met some member of the company, usually Watson, by appointment at other places than Celina. He knew that the same men operated some of the time under the name, "The Imperial Talking Machine Company," and that they used a different name as they worked different sections, changing the plates

on the machines to correspond with the change of name.

We have not undertaken to refer to all the evidence bearing upon this question, but only enough to make it clear that it could not be properly ruled as matter of law that the plaintiff was a holder in due course. It cannot be said that only an inference favorable to the plaintiff could reasonably be drawn from this evidence. It follows that the court erred in sustaining the motion for a directed verdict.

*Reversed and remanded.*