In re James Warren **BUTTENDORF** and Wendy West Howard **Buttendorf**, Debtors.

**TRUMBULL BUILDING CENTER, INC., Plaintiff,**

v.

James Warren **BUTTENDORF** and Wendy West Howard Buttendorf, Defendants.

Bankruptcy No. 80–00220.
Adv. No. 80–0131.

United States Bankruptcy Court, D. Vermont.

Feb. 28, 1981.

James Anderson, Barre, Vt. and Charles C. Hallas, Bridgeport, Conn., for plaintiff.

Allan E. Kalsmith, Montgomery Village, Vt., for defendants.

## FINDINGS OF FACT, MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is a combined contested and adversary proceeding. The plaintiff filed a Complaint to Determine Dischargeability of debt on November 10, 1980 with the Answer of Defendants filed on November 25, 1980. Subsequently the Plaintiff filed a Motion for a Change of Venue to the District of Connecticut for a hearing on its Complaint to Determine Dischargeability.

The Motion for Change of Venue was heard prior to that on the Plaintiff's Complaint. At the same time the Plaintiff put in issue the venue of the bankruptcy case itself on the grounds that the Debtor, James Warren Buttendorf, did not have a domicile in this jurisdiction or did not reside here for the greater portion of 180 days prior to the date of the filing of his Petition.

After the introduction of testimony, the Court was satisfied that the family structure of the Debtor moved to this jurisdiction on July 5, 1980 and it was the place to which he intended to return after his temporary absence in Connecticut during the month of July. Accordingly, the Court ruled that with the filing of the Petition on October 8, 1980, the Debtor had his domicile in the District for the greater portion of 180 days prior to the filing and the require-

ments as to venue had been satisfied. It was also represented by the Debtor's counsel at the hearing that all of the assets of the bankrupt estate were located in this jurisdiction since April, 1980. This was uncontradicted. Even without domicile, such location of assets would establish proper venue in this District. The Plaintiff's attorney argued that § 1472 of the Code relating to venue and which includes the provision as to location of assets as an alternative for domicile or residence is not to take effect until April 1, 1984. This is not correct. § 1472 applies to the courts of bankruptcy during transition. 1 Collier 15th Ed. 3–127 § 3.02.

### As to Change of Venue for Hearing on the Complaint

The Plaintiff moved for a change of venue for hearing on its Complaint on the grounds that the Debtor's moving to this jurisdiction had the effect of hindering creditors residing in Connecticut; that all records, witnesses to the business transactions of the parties and all agreements are located in Connecticut; that costs to the Plaintiff to prosecute this action in this jurisdiction is greater and unfair; that in the interest of justice and convenience of the Plaintiff the case should be transferred to the United States Bankruptcy Court for the District of Connecticut; that the case involved issues of Connecticut law and it would be more appropriate for a Connecticut Bankruptcy Judge to hear the case.

■ There was no testimony introduced at the hearing in support of any of these allegations. Lacking such it must be assumed that there is an approximate balance as to the availability of witnesses, the cost of obtaining their attendance and that the transfer of venue would inconvenience the Debtor's trial preparations as much as the retention of venue would inconvenience the creditor's trial preparations. Under such circumstances a change of venue should not be ordered. *In Re Cole Associates, Inc.* (Bkrtcy.1980) 7 B.R. 154, 6 BCD 565, 2 CBC 2d 582.

■ Further, the debtors seeking relief under the Bankruptcy Code are entitled to greater consideration, in balancing the equities, than a plaintiff with an operating business who is financially able to bear the costs of trial in this jurisdiction. On the basis of the foregoing, the Motion for Change of Venue for the hearing was denied and the trial proceeded on the merits.

The Complaint to Determine Dischargeability is predicated on § 523(a)(2) of the Bankruptcy Code which makes non-dischargeable any debt for obtaining money, property or services by false pretenses, a false representation or actual fraud. From the testimony, the exhibits introduced at the hearing and the records in the case, the following facts are found and conclusions reached:

### FINDINGS OF FACT

The Debtor filed a Voluntary Petition for Relief under Chapter 7 on October 8, 1980 with Schedules attached showing the Plaintiff as an unsecured creditor in the sum of $24,733.87.

The Plaintiff, a Connecticut corporation, has been for the past several years engaged in the building supply business and the Debtor, James Warren Buttendorf, was a contractor in Connecticut both as a member of the partnership known as Buttendorf Brothers with his brother, Douglas, as the other partner and as an individual after the cessation of the partnership about one and one-half years ago.

The partnership had a line of credit with the Plaintiff of $15,000.00 and the Plaintiff through its president, John Pinciaro, did business with Douglas Buttendorf and James Warren Buttendorf, the debtor, as members of the partnership.

During the existence of the partnership, it gave to the Plaintiff four checks totaling $18,000.00, three of which were dishonored for insufficient funds and the fourth was not deposited by the Plaintiff. After the checks were dishonored, Pinciaro had a conversation with James Buttendorf in February or March, 1980, during which the Debtor indicated that he was expecting funds

from jobs in New York, and when these were available, the checks would be honored. This never occurred.

Subsequently, Pinciaro had a conversation with the Debtor's brother during which he learned that the Debtor was going to sell his house in Connecticut. He then contacted the Debtor and elicited a promise from him for the payment of the $18,000.00 from the proceeds of the sale of the house.

The house was in fact sold with a closing on April 11, 1980, when the Debtor received the sum of $128,345.04 from the sale and after the payment of mortgages, liens and closing costs, he netted $36,395.38. From this sum, he paid the Plaintiff $14,000.00 and he indicated that he would later pay the additional sum of $7,000.00 which was deducted from the $36,395.38 at the closing to be held in escrow for the completion of certain work which was an obligation of the Debtor.

The Debtor was unable to make payment of the $7,000.00 to the Plaintiff for the reason that part of it was attached by the Debtor's brother on his claim against the Debtor for obligations incurred during the existence of the partnership. The rest of the $7,000.00 was expended in completing the work for which the Debtor had obligated himself.

When the Plaintiff received the $14,-000.00 payment from the Debtor, it extended further credit to him and supplied him with additional materials.

At the time that he paid the Plaintiff the sum of $14,000.00 he fully intended to make payment of the balance due to the Plaintiff and in fact did make an additional payment of $3,200.00 represented by two checks of $1,000.00 each and one of $1,200.00.

The failure of his commitment to the Plaintiff resulted from financial losses in most of the jobs which the Debtor had undertaken and which required additional work on his part after he made the promise to pay the Plaintiff.

The Debtor had witnessed the experience of his brother-in-law going through bankruptcy. At the time of his promise to the Plaintiff's president, John Pinciaro, he was determined not to do the same thing as his brother-in-law and to make payment to the Plaintiff.

The balance now due from the Debtor to the Plaintiff is $24,733.87.

## MEMORANDUM AND CONCLUSIONS

The Plaintiff's Complaint is based on § 523(a)(2) of the Bankruptcy Code which requires a showing that the Debtor obtained money or property by false pretenses or false representations or by actual fraud. This statute is the successor of § 17(a)(2) of the Bankruptcy Act. The interpretation of Section 17 and the court decisions relating to it are equally applicable to § 523(a)(2) of the Code since the wording is essentially the same.

Under § 17(a)(2) it was uniformly held that a liability for obtaining money or property by false pretenses or false representations results only if there was such fraud on the part of the bankrupt as would involve moral turpitude or intentional wrong. See *1A Collier's 1634* as follows:

"The frauds included in the portion of clause (2) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other party ___." Cases cited.

Our Supreme Court supports the view recited in the above treatise. *Pelton, Executor, v. Dumas*, 117 Vt. 13, 17, 84 A.2d 408.

▪ The evidence does not support such fraud on the part of the Debtor as would make the debt non-dischargeable. His promise to make payment to the Plaintiff appeared to be in good faith but, like all debtors who find themselves in financial straits, hope sprung eternal and he was looking at a light at the end of the tunnel which was not visible. He was thwarted in his efforts by continuing reverses. Had he

intended to defraud the Plaintiff he would have retained the payment of $14,000.00 from the sale of the house as well as the $3,200.00 which he subsequently paid the Plaintiff.

The Plaintiff apparently also claims that the issuance of the checks for $18,000.00 dishonored for insufficient funds constituted fraud. When these checks were delivered to the Plaintiff the Debtor represented that there would be funds available in the future for payment. As such there was no basis for actionable fraud. Neither representations of fact that will exist in the future nor mere promises, though false and intended to deceive, afford the basis of actionable fraud. *Woods v. Scott*, 107 Vt. 249, 178 A. 886; *Comstock et al. v. Shannon et al.*, 116 Vt. 245, 250, 73 A.2d 111.

And in *Hunt v. Lewis*, 87 Vt. 528, 531, 90 A. 578; our Supreme Court said:

> "An actionable misrepresentation must relate to a present or past state of facts. *Belka et al. v. Adams*, [82 Vt. 456, 74 Atl. 91] supra. Representations of intention, or promises, having reference merely to the future, constitute no ground of action. An action of deceit does not lie for failure on the part of a promisor to perform a promise made by him to do something in the future, which he does not intend to do and subsequently refuses to do, although the promisee has acted in reliance on such promise to his damage. 1 Jaggard on Torts, 583, 584; Bigelow on Frauds, 11, 12; *Robertson v. Parks*, 76 Md. 118, 24 Atl. 411; *Patterson v. Wright*, 64 Wis. 289, 25 N.W. 11; *Dawe v. Morris*, 149 Mass. 188, 21 N.E. 313, 4 L.R.A. 158, 14 Am.St.Rep. 404. The distinction between a representation that something exists which does not, and a representation, or more properly a promise, that something shall be done thereafter, is obvious."

The issuance of worthless checks, absent a showing of moral turpitude or intentional wrong, will not defeat a discharge under Section 17(a)(2). *Swanson Petroleum Corp. v. Cumberland* (Neb.1969) 184 Neb. 323, 167 N.W.2d 391.

Likewise it has been held that the issuance of worthless checks does not in itself prove an intent to defraud. *Blue Bonnet Creamery, Inc. v. Gulf Milk Ass'n* (La.App. 1965) 172 So.2d 133.

The Plaintiff has not established the necessary facts to constitute fraud within the contemplation of the statute. Judgment dismissing the Complaint is being entered.