**In re Douglas GARVER and Vicki Garver, Debtors.**

**Fred PLOOF, Jr., d/b/a F & F Fence, Plaintiff,**

v.

**Douglas GARVER and Vicki Garver, Defendants.**

**Bankruptcy No. 82–122.
Adv. No. 82–0128.**

United States Bankruptcy Court,
D. Vermont.

Jan. 20, 1983.

William Meub, Middlebury, Vt., and Olin McGill, Montpelier, Vt., for Fred Ploof, Jr.

Jeffrey Smith, Brandon, Vt., for Debtors.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

This adversary proceeding arises on the complaint of the plaintiff to determine the dischargeability of debt. The complaint is predicated on § 523(a)(2)(A), which makes nondischargeable any debt for obtaining money, property, services, or an extension of credit, by false pretenses, a false representation, or actual fraud on which the plaintiff, as a creditor, relied. In particular, the plaintiff alleges that through a series of false representations and several representations amounting to actual fraud, upon which the plaintiff relied, the debtor, Douglas Garver, obtained gravel and material for a septic system (property); excavation work and installation of the septic system (services); and an extension of credit.

## FACTS

In September 1980, Douglas Garver and Vicki Lane Kent, (who subsequently became Vicki Lane Garver), sought to construct a home in Weybridge, Vermont. In order to start the project, the Defendants applied to the Middlebury National Bank for a construction loan. As part of their loan application the debtors were required to submit an estimate of their proposed construction costs. In their estimate, the debtors allotted $1,150.00 for excavation and gravel. On October 29, 1980, the Bank approved the loan which was to be subsequently converted into permanent financing with the Vermont Housing Finance Agency upon completion of the house.

In November, 1980 the debtor negotiated with the plaintiff for additional excavation work which became necessary when the debtors decided to build the house on a higher elevation. The cost would amount to about $4,000.00 and the debtor instructed the plaintiff to proceed representing that he had a construction loan to cover the cost. Based on this representation the plaintiff proceeded with the work. As a matter of fact the debtor was not covered for this cost in a construction loan. Relying on the representation of the debtor the plaintiff completed the excavation work at a cost of $4,625.00 and he submitted his bill to the debtor for payment on January 12, 1981. The debtor disregarded the invoice and in late February, 1981 the plaintiff again contacted the debtor for payment. At this time the debtor advised the plaintiff that proceeds for construction were running low and that he wanted to conserve these for carpentry and inside work.

At this point the debtor requested the plaintiff to accept installment payments which he expected to generate from profits from the operation of the debtor's restaurants. Based on this representation and the immediate payment of $1,000.00 the debtor accepted the plan of payment and even performed additional work for the debtor at the building site in March, 1981.

When the plaintiff spoke to the debtor in February, 1981 his bank loan had been exhausted, the principal reason being that he had diverted funds from his construction loan and had used about $10,000.00 to $12,000.00 as an infusion of capital for his restaurant business which was encountering financial reverses. This was exactly contrary to the debtor's assurance to the plaintiff that the installment payments would be made from restaurant profits. At that time the debtor well knew that he was misrepresenting the situation to the plaintiff.

Since the plaintiff did not receive the promised installment payments in March and April, 1981 he discontinued all work on the project. However, in mid-May the debtor contacted the plaintiff and requested him to finish the excavation work and install a septic system which was necessary for the conversion of his bank construction loan to permanent financing with the Vermont Housing Financing Agency. The plaintiff refused to do any further work until his then outstanding bill was paid. The debtor thereupon represented to the plaintiff that he had received the approval of a loan and if the plaintiff would complete the excavation work and install the septic system he would be paid on Friday, May 22, 1981 in full, then and there. Relying on the representation, which was false, the plaintiff completed the work and installed the septic system. He presented his bill to the debtor on May 22, 1981 which was approved as to charges by the debtor. The plaintiff requested payment in full by the debtor as he promised but this was denied with the statement by the debtor that the loan had not gone through and he had no money with which to pay the plaintiff.

Finally, on June 1, 1981 the plaintiff threatened legal action if payment was not made. After negotiations the plaintiff agreed to accept a note for the amount then due of $7,504.73 payable in monthly installments of $1,000.00 which the debtor represented would come from the restaurant business. The debtor made 3 payments. He has defaulted leaving a balance due of $4,504.73 with interest at the rate of 18%.

By virtue of the installation of the septic system by the plaintiff resulting from the misrepresentations of the debtor the bank construction loan was converted into permanent financing approved by the Vermont Housing Financing Agency. This also resulted in a reduced interest rate beneficial to the debtor.

## DISCUSSION

The credible testimony in this case has established by clear and convincing evidence that the debtor embarked on a series of false and reckless misrepresentations upon which the plaintiff continually relied much to his detriment and sorrow. At times it is difficult to comprehend how a sophisticated contractor, if in fact the plaintiff is one, can be lulled into a false sense of security on not one but several occasions. It could very well be that the plaintiff was plagued by the economic climate which required him to accept less desirable projects than he would entertain in more prosperous times. In any event this did not excuse the bad faith, immoral conduct and false representations of the debtor. He knew that the bank loan was not approved; that his restaurant business was floundering and that there was no way that he could pay for the septic system he desperately needed to qualify for the permanent conversion loan with the Vermont Housing Finance Agency at a more favorable rate of interest. In sum, he was guilty of fraud in its most pronounced sense and the plaintiff unfortunately relied on his misrepresentations.

The pertinent statute which excepts the debtor's obligation to the plaintiff is § 523(a)(2)(A) of the Code which provides:

"(a) A discharge ... does not discharge an individual debtor from any debt—

(2) for obtaining money, property, or services, or an extension of credit, by—

(A) false pretenses, a false representation, or actual fraud..."

§ 523(a)(2)(A) is substantially the same in both purpose and wording as its predecessor § 17(a)(2) of the Bankruptcy Act. As such, the case law and interpretations of Section 17 are equally applicable to cases arising under section 523. This proposition has been generally accepted by the courts. *In re Harper,* 19 B.R. 207 (Bkrtcy.M.D.Fla. 1982); *In re Magnusson,* 14 B.R. 662 (Bkrtcy.N.D.N.Y.1981); *In re Buttendorf,* 11 B.R. 558 (Bkrtcy.D.Vt.1981); *In re Miller,* 5 B.R. 424 (Bkrtcy.W.D.La.1980).

As stated by this Court in *In re Buttendorf,* 11 B.R. 558 at 561:

Under § 17(a)(2) it was uniformly held that a liability for obtaining money or

property by false pretenses for false representations results only if there was such fraud on the part of the bankrupt as would involve moral turpitude or intentional wrong. See 1A Collier's 1634 as follows:

> "The frauds included in the portion of clause (2) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality is insufficient. It must affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other party..." Case cited.

Our Supreme Court supports the view recited in the above treatise. *Pelton Executor v. Dumas,* 117 Vt. 13, 17, 84 A.2d 408.

See also *Matter of Gessler,* 11 B.R. 489, 4 C.B.C.2d 985 (Bkrtcy.W.D.Wis.1981), which set out the three elements required for non-dischargeability of a debt under § 523(a)(2)(A), viz:

(1) that the Defendant made a materially false representation.

(2) that the representation was made with the intent to defraud; and

(3) that the Plaintiff relied on the false representation.

And our Vermont Supreme Court, referring to the burden of proof as to fraud said in *Leno v. Meunier* 125 Vt. 30, 35, 209 A.2d 485:

> "Fraud is never presumed, *Century Indemnity Co. v. Mead,* 121 Vt. 434, 440, 159 A.2d 325, and must be established by clear and satisfactory evidence, *Laughlin v. McConnel,* 201 Pa.Super. 180, 191 A.2d 921, as to which the defendants had the burden of proof.
> " 'The term fraud carries different meanings' and 'however classified, fraud involves wrongdoing and the conscious participation of the alleged wrongdoer.' *Kendall's Admr. v. Roseberry,* 120 Vt. 498, 502, 144 A.2d 836."

See also *Lyndonville Savings Bank and Trust Co. v. Peerless Insurance Company* 126 Vt. 436, 440, 234 A.2d 340.

And in the *Buttendorf* case, supra, 11 B.R. 558, 562 this court cited the following with approval from *Hunt v. Lewis,* 87 Vt. 528, 531, 90 A. 578, viz:

> "An actionable misrepresentation must relate to a present or past state of facts. *Belka et al. v. Adams, supra.* Representations of intention, or promises, having reference merely to the future, constitute no ground of action. An action of deceit does not lie for failure on the part of a promisor to perform a promise made by him to do something in the future, which he does not intend to do and subsequently refuses to do, although the promisee has acted in reliance on such promise to his damage."

Although the debtor did make some promises, having reference merely to the future, which may not have constituted fraud, his entire conduct, in dealing with the plaintiff in the myriad of transactions between them clearly established that he had a definite intent to deceive the plaintiff and that he was guilty of actionable misrepresentation. This is supported by *Gramatan National Bank v. Beecher,* 121 Vt. 39, 46, 146 A.2d 246 where the Court said:

> "While a promise, standing alone, does not afford the basis of actionable fraud, it is not improper to consider broken promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme. *Harponola Company v. Wilson,* 96 Vt. 427, 435, 120 A. 895; *Comstock v. Shannon,* supra, [116 Vt. 245] at page 250, [73 A.2d 111] citing *Adams v. Soule,* 33 Vt. 538, 544; *Wilbur v. Prior,* 67 Vt. 508, 512, 32 A. 474, and *Harponola Co. v. Wilson,* supra. A future promise may be fraudulent when it is a part of a general scheme or plan, existing at the time, to induce a person to act, as he otherwise would not, to his injury. 37 C.J.S., Fraud, § 11, pages 235, 236."

This court is satisfied that the plaintiff has sustained his burden in establishing by clear and convincing evidence that the debtor has obtained property and services of the plaintiff by such fraud as is contemplated

under § 523(a)(2)(A) of the Bankruptcy Code. His debt to the plaintiff is non-dischargeable.

Judgment is being entered in accordance with this memorandum.