**In re James Albert WALKER, Debtor.**

**The MERCHANTS BANK, Plaintiff,**

**v.**

**James Albert WALKER, Defendant.**

Bankruptcy No. 81–00127.
Adv. No. 81–0121.

United States Bankruptcy Court,
D. Vermont.

Aug. 15, 1981.

William G. Congleton, Burlington, Vt., for plaintiff.

William D. Robinson, Burlington, Vt., for debtor-defendant.

MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding in which the Plaintiff objects to the discharge of the debtor pursuant to § 727(a)(5) under which the Plaintiff claims that the Debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. Specifically, the Plaintiff claims that the Debtor has not satisfactorily explained the loss of a 1970 International Scout which allegedly was security for a loan from the Plaintiff to the Debtor. In the alternative the Plaintiff seeks to have declared non-dischargeable the debt of the Debtor to the Plaintiff on the grounds that pursuant to § 523(a)(2)(A) of the Bankruptcy Code the Debtor obtained money under false pretenses in that he had listed in the note one 1970 International Scout as collateral when in fact it had allegedly been transferred at the time that the Debtor procured the loan from the Plaintiff.

The Debtor filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on June 18, 1981 and in his Schedules he listed the Merchants Bank as an unsecured creditor by virtue of two promissory notes in the sums of $4,433.66 and $527.44. The 1970 International Scout is not listed as an asset.

On January 23, 1981, the Debtor executed and delivered to the Plaintiff a promissory note in the total sum of $5,770.44 and this note represented a consolidation loan which was handled by David J. Keefe as loan officer of the Plaintiff. He filled in all of the data relating to the terms of the note and it was signed by the Debtor and his wife, Debra R. Walker. The note contained a space for description of collateral. The Debtor at the time of closing the loan was handed a copy of the note and the place indicated for description of collateral was blank. However, at the time of the hearing the original note in the sum of $5,770.44 was admitted as an exhibit and the words "1970 International Scout" appeared in the space for description of collateral. Loan Officer Keefe admitted that he did not

write in the 1970 International Scout as collateral for the note and he could not explain how or when this had been done.

At the time of the execution of the note, as a matter of fact, the Debtor did not own a 1970 International Scout but had disposed of it about a year before the note was executed. There was no intention on his part to give the Bank the Scout as collateral for the loan. He had on November 15, 1979 executed and delivered to the Plaintiff a security agreement granting the Plaintiff a security interest in a 1970 International Scout to secure payment of a note dated 11/15/79 in the principal sum of $3,675.37 and also to secure "also any and all other liabilities of Debtor to the Lender, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising."

At that time the Debtor did own a 1970 International Scout but he subsequently got rid of this collateral and he does not remember if he notified a representative of the bank at the time that he disposed of the International Scout. Any balance owing on the loan securing the Scout was consolidated in the note dated January 23, 1981.

## CONCLUSIONS

It is apparent from the testimony adduced at the hearing that the Debtor had no intention to pledge the 1970 International Scout as security for the consolidation loan of January 23, 1981. It seems fair to conclude that some representative of the bank filled in the space for description of collateral sometime after the note was executed and delivered to the Plaintiff. This apparently was done on the basis of the prior security agreement which must have been in the files of the Bank, and its representative decided to carry over the security as collateral for the January 23, 1981 note. The Debtor had no intention whatsoever to deceive the Bank.

From the evidence it is clear that the Debtor satisfactorily explained the disposition of the 1970 International Scout and, therefore, the objection to the discharge based on § 727(a)(5) of the Code

fails. It is also apparent that the Debtor did not obtain any money from the Bank under false pretenses or false representations pursuant to § 523(a)(2)(A) of the Code. The frauds included in this portion of the Code are those which involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made and that they were relied upon by the other party. 3 Collier 15th Edition 523–39 and 523–40 § 523.08(4).

The Courts, under § 17(a) of the Bankruptcy Act, the forerunner of § 523 under the Code and couched in the same language, have uniformly construed that false pretenses or false representations entail frauds which involve moral turpitude or intentional wrong and not those implied in law. *Underwood v. Ajax Rubber Company, Inc.*, 296 S.W. 964, 11 Am.B.R. (N.S.) 488; *In the Matter of Noble*, 42 F.Supp. 684, 48 Am.B.R. (N.S.) 391. See also cases cited under Note 12 3 Col. 15th Ed. 523–39.

The Plaintiff has failed to sustain its burden both as to the objection to discharge and its Complaint to determine dischargeability. This action should be dismissed.