In re David Michael LAMB and Carolyn Lynette Lamb, Debtors.

AMERICAN BANK & TRUST COMPANY IN MONROE, Plaintiff,

v.

David Michael LAMB and Carolyn Lynette Lamb, Defendants.

Bankruptcy No. 582–00496–M.
Adv. No. 582–0089.

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

Feb. 25, 1983.

Charles H. Ryan, Boles & Mounger, Monroe, La., for plaintiff.

Sadye K. Bernheim, Monroe, La., for defendants.

LeROY SMALLENBERGER, Bankruptcy Judge.

### Findings of Fact

David Michael Lamb and Carolyn Lynette Lamb, defendants and debtors herein, sought relief under Chapter 7 of Title 11 of the United States Code. American Bank & Trust Company in Monroe provoked this adversary proceeding with its objection to the discharge of the debtors from a certain debt owed to American.

September of 1980 found the debtors in dire need of cash. A cousin of Mrs. Lamb named Joyce Nickens offered to prevail upon her fiancee named Michael Goodison to lend the debtors the needed cash. Soon thereafter, Mr. Goodison issued seven checks to the debtors totalling $17,000.00. The terms of this loan were unusual to say the least. There was never any personal contact with Mr. Goodison. As Mr. Lamb testified:

"Q: And is it correct that without ever seeing [Mr. Goodison] before, [he] started sending you checks?

"A: Yes." [Tr. 5].

Mr. Lamb testified that he did not sign a note or any evidence of his indebtedness. He described the loan as "kind of an open-end deal". He was to repay the debt as "soon as [he] got the thing rolling". [Tr. 6].

After the Lambs had deposited the checks, they were telephoned by another stranger to them. This person's name was Martin Green. He represented himself to be Mr. Goodison's attorney, accountant and financial advisor. Like Mr. Goodison, Mr. Green was a resident of New York. [Tr. 33]. Mr. Goodison said that several small checks should be sent rather than one large check. Mrs. Lamb related:

"A: ... it would be easier on his account, that his cash flow or something—he sounded very professional—his cash flow, it would all work out better if we would borrow the [money] in smaller payments than if we just took it all out at one time ...". [Tr. 31].

According to Mrs. Lamb, Mr. Green advised her that some of the money should be returned to him. The Lambs returned $2,600.00 to Mr. Green. Mrs. Lamb testified:

"A: So [Mr. Green] would tell me what to do, how much to send him, and he said that it was to create a cash flow. Well, I'd never had that much money before in my life; I don't know how you work a cash flow, so that's what I did." [Tr. 34].

Some of the money deposited was converted into a cashier's check and sent to Mr. Green. Another $1,952.00 was sent to Joyce Nickens by the Lambs. [Tr. 34].

The first six checks issued by Mr. Goodison were deposited by the Lambs into their personal checking account at American Bank. Some cash was withheld by the Lambs and some money was returned to Mr. Green and Ms. Nickens as previously recounted. The rest of the deposits were provisionally credited to the Lambs by the bank and the money was used to pay off debts.

The seventh check, in the amount of $5,000.00 was taken to the bank for deposit on October 9, 1980 by Mrs. Lamb. An officer of American Bank informed Mrs. Lamb that the six previous checks were NSF. All of the checks had been drawn on a New York bank.

Subsequent criminal investigations resulted in the arrest and conviction of Mr. Green and Ms. Nickens. Mr. Goodison

could not be found. No charges were preferred against the Lambs. Indeed, the Lambs aided the prosecutors in the arrest of Mr. Green and Ms. Nickens.

It is the contention of American Bank that it has been the victim of a fraud scheme. In state court, American Bank filed suit against the Lambs alleging fraud on their part. Default judgment was taken against the Lambs on May 18, 1981. Mr. Lamb testified that they did not answer the suit because they could not afford the services of an attorney. [Tr. 38].

It is this default judgment American Bank wishes to have declared nondischargeable. The basis of American Bank's claim is 11 U.S.C. § 523(a)(2)(A) which states in pertinent part:

> "(a) A discharge under section 727, 1141, or 1328(b), of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> "(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
> "(A) false pretenses, a false representation, or actual fraud, . . . ".

### Conclusions of Law

■ As to false pretenses or false representations stated in § 523(a)(2)(A), it is meant those involving moral turpitude or intentional wrong. Fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. American Bank must affirmatively show that the debtors made the representations knowing that such representations were fraudulent and were relied upon by the bank. 3 Collier on Bankruptcy ¶ 523.08[4], p. 523–39–42 (15th Ed.1982).

■ As used in § 523(a)(2)(A), "actual fraud" consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another. 3 Collier on Bankruptcy ¶ 523.08[5], P. 523–48 (15th Ed.1982).

■ The burden of proof is upon the plaintiff, American Bank. Stated simply,

the elements to be proven by American Bank are thus:

(1) The debtors employed means to obtain the money which the debtors knew to be false at the time of the representation;

(2) The debtors subjectively intended to deceive or wrongfully induce American Bank into advancing the money to the debtors;

(3) American Bank actually relied upon the debtors' misrepresentations; and

(4) Such reliance was reasonable and consistent with that of a reasonably prudent person.

*In re Toleikis,* 19 B.R. 944 (Bkrtcy.E.D. Mich.1982). See also *In re Vissers,* 21 B.R. 638 (Bkrtcy.E.D.Wis.1982).

■ American Bank asserts that it may prove fraud by the preponderance of the evidence. That is not the case. The burden of proof upon American Bank is heavy for it must prove each element of § 523(a)(2)(A) by the clear and convincing evidence. *In re Cook,* 21 B.R. 112 (Bkrtcy. D.N.M.1982). See also *In re Toleikis* and *In re Vissers.*

■ A state court judgment against the debtors founded upon fraud may establish a prima facie case of fraud in the bankruptcy court. If that state court judgment was taken against the debtors by default it does not establish a prima facie case of fraud but is part of the evidence to be considered by the bankruptcy court. *In re Wong,* 5 B.C.D. 222 (B.C.D.Oregon 1979).

It is incumbent upon American Bank to show that Mr. and Mrs. Lamb deposited the NSF checks with full knowledge that each check would bounce and did so with the intent of defrauding the bank of money. The facts show that the debtors were desperate for money. It is also apparent from the facts that neither Mr. or Mrs. Lamb were very experienced or knowledgeable about debt financing. Mrs. Lamb had not graduated from high school and Mr. Lamb had secured only an equivalent diploma. The testimony of Mrs. Lamb at Tr. 34 concerning "cash flow" buttress the court's be-

lief that the Lambs were preyed upon by Mr. Goodison, Mr. Green and Ms. Nickens. The court does not think that American Bank has proved clearly and convincingly that the Lambs deposited the checks with knowledge that they were NSF and with intent to defraud the bank.

■ The depositing of an NSF check and receiving credit is analogous to the debtor giving an NSF check in return for goods and services. The issuance of a bad check even with the knowledge of the insufficiency of funds on deposit does not of itself give rise to a nondischargeable liability. *Matter of Anson,* 9 B.R. 741 (Bkrtcy.W.D.Miss. 1981). See also *Matter of Murray,* 7 B.R. 899 (Bkrtcy.W.D.Miss.1981) and *Blue Bonnet Creamery, Inc. v. Gulf Milk Association,* 172 So.2d 133 (La.App. 1st Cir.1965) which has been followed by other bankruptcy court jurisdictions. Drawing this analogy to the facts of the case at bar, how can it be said that American Bank has proved the fraudulent intent of the debtors or has relied on the debtors' misrepresentations.

This court must hold that the default judgment in favor of American Bank and against Mr. and Mrs. Lamb is a dischargeable debt.

■ By amended answer, debtors have asked the court to award them attorney's fees in the amount of $750.00. Debtors invoke 11 U.S.C. § 523(d). That request is denied for under these facts it would be inequitable to award the debtors attorney's fees. *In re Cook.*