In re Everett Lee BARRUP, Debtor.

Johnathan LUSSIER, Plaintiff,

v.

Everett Lee BARRUP, Defendant.

Bankruptcy No. 83–85.
Adv. No. 83–0099.

United States Bankruptcy Court,
D. Vermont.

Nov. 30, 1983.

Deborah T. Bucknam, Hardwick, Vt., for plaintiff.

Gilbert T. Normand, Montpelier, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On May 10, 1983, the debtor filed for relief under Chapter 7 of the Bankruptcy Code (Code). On October 4, 1983, plaintiff filed the instant complaint to determine the dischargeability of a debt. A final hearing, after notice, was held on November 18, 1983. From the records in the case and the testimony adduced at the hearing, the following facts have been established.

### FACTS

In June 1981 the debtor entered an agreement to buy, lock, stock and barrel, a farm owned by the plaintiff. The debtor entered possession of the farm and began to make payments under the purchase contract. Subsequently, in February 1983, the plaintiff and the debtor voided the 1981 purchase agreement and entered into an agreement whereby the debtor would lease the farm premises for a term of seven years, and would buy such animals and equipment as were on the farm as of June 15, 1982. The debtor remained in possession of the premises and began to perform under the lease and the personal property sales agreement.

In April 1983 the debtor suspended farming operations and allowed the plaintiff to take possession of such animals and equipment as were then on the farm. After offsetting the value of collateral recovered, the plaintiff claimed a deficiency of $45,000 on the promissory note executed in connec-

tion with the personal property sales agreement. The plaintiff filed the instant complaint on the ground that, at the time of formation of the personal property sales agreement, the debtor represented verbally that there were 78 of the plaintiff's cows on the leased farm, and that the debtor granted the plaintiff a security interest, evidenced by a written security agreement and financing statements, in "78 cows . . . located [on the leased farm]," when in fact the debtor had possession of less than 78 of the plaintiff's cows, and the debtor knew there were less than 78 of the plaintiffs cows on the leased farm. The amount of the $45,-000 deficiency is not in dispute.

## DISCUSSION

■ The Code provides that debts not excepted from discharge include debts incurred through the use of false pretenses, a false representation, or actual fraud, Code § 523(a)(2)(A), or through the use of a written, materially false statement respecting the debtor's financial condition, made by the debtor with deceitful intent, upon which it was reasonable for the creditor to rely and on which the creditor did in fact rely, Code § 523(a)(2)(B). Courts narrowly construe exceptions to discharge and the creditor bears the burden of proving that the debt owed to him falls within a statutory exception. *Matter of Forcella,* 27 B.R. 111 (Bkrtcy.M.D.Fla.1983); *In re Norman,* 25 B.R. 545 (Bkrtcy.S.D.Cal.1982); *Matter of Thomas,* 21 B.R. 553 (Bkrtcy.E.D.Wis.1982); *In re Ayers,* 25 B.R. 762 (Bkrtcy.M.D.Tenn. 1982); *Matter of Lambert,* 21 B.R. 23 (Bkrtcy.Mich.1980). Exceptions to discharge under code section 523(a)(2) are founded in tort rather than contract. *In re Rippey,* 21 B.R. 954 (Bkrtcy.N.D.Tex.1982). Debts encompassed by Code section 523(a)(2) encompass only debts incurred through fraud involving moral turpitude or intentional wrong where deceit or trick is used to circumvent and cheat another. *In re Crook,* 13 B.R. 794 (Bkrtcy.D.Maine, 1981). Thus, fraud which may exist without the imputation of bad faith is insufficient to bar the discharge of a debt under Code section 523(a)(2). *Id; accord, In re Simpson,* 29 B.R. 202, 209 (Bkrtcy.N.D. Ia.,1983).

This court has previously had occasion to consider a creditor's objection to the discharge of a debt under Code section 523(a)(2). In *In re Fike,* 31 B.R. 760, 763 (Bkrtcy.D.Vt., 1983) the court observed that the frauds included in section 523(a)(2) "are those which in fact involve moral turpitude or intentional wrong; . . . [i]t must further affirmatively appear that such representations were knowingly and fraudulently made and that they were relied upon by the other party. 3 *Collier* 15th Edition 523–39 and 523–40 Sec. 523.08(4). . . The Vermont Supreme Court supports the view recited in *Collier. Stroh v. Dumas* (1951), 117 Vt. 13, 17, 84 A.2d 408." In *In re Golowaty,* 13 B.R. 781 (Bankr.D.Vt.,1981) the court observed that fraud implied in law, which may exist without imputation of bad faith, is insufficient to bar the discharge of a debt under Code section 523(a)(2). *Accord, In re Walker,* 13 B.R. 690 (Bankr.D.Vt., 1981).

The debtor testified that, in conjunction with securing his rights under the personal property sales agreement, he represented to the plaintiff that 78 of plaintiffs' cows were located on the leased farm; and the debtor, at formation of the agreement, when the debtor knew there were not 78 cows on the farm, purported to grant to the plaintiff a security interest in "78 cows and all substitutions and replacements since June 15, 1982." The debtor also testified that, at formation of the agreement, he "never intended to pay [the plaintiff] less than every cent." The plaintiff presented no evidence or testimony to impeach the debtor's representation to this effect. The issue for determination, then, is whether deceitful intent may be inferred from all the circumstances of the case, and, with respect to the written security agreement, whether it was reasonable for the plaintiff to rely thereon and whether the plaintiff did in fact rely thereon.

■ The plaintiff by his attorney advanced the theory that deceitful intent should be inferred from the fact that, prior

to signing the February 1983 security agreement, the debtor sold at auction, without informing the plaintiff, some of the cows which the plaintiff had placed on the farm at the time of execution of the 1981 real and personal property sales agreement, in what may have been a violation of that agreement. However, a creditor objecting to the dischargeability of a debt under Code section 523 must establish by clear and convincing evidence that the debt comes within one of the exceptions to discharge. *In re Fike,* 31 B.R. at 763; *In re Lamb,* 28 B.R. 462, 464 (Bkrtcy.W.D.La., 1983). Although the debtor may have breached the 1981 agreement, this breach, if any, without more, does not establish that in 1983, at the time of formation of the 1983 agreement, the debtor harbored deceitful intent. Testimony at the hearing established that the plaintiff and the debtor had, at formation of the 1983 agreement, jointly adopted, for the sake of convenience, a figure of 78 cows to be the figure to be used in the documents evidencing the 1983 personal property sales agreement. It was this figure of convenience, jointly adopted by the plaintiff and the debtor, that the debtor honored when he purported to buy, and to grant a security interest in, "78 cows" on February 22, 1983. On this date it was the apparent intention of the plaintiff to sell and to take a security interest in such cows as were then on the farm. On this basis the debtor's verbal representations to the plaintiff that there were 78 cows on the farm were not fraudulent as to the plaintiff.

■ With respect to a written instrument materially false, reliance thereon is unreasonable and discharge is not precluded where the creditor knew from the outset that the statement was inaccurate or when the creditor's investigation suggests that the statement is inaccurate. *In re Ardelean,* 28 B.R. 299 (Bkrtcy.N.D.Ill.1983). The court notes that, as the debtor's verbal representations to the plaintiff were not fraudulent as to the plaintiff within the meaning of Code section 523(a)(2)(A), the memorialization of these representations in the security agreement also were not fraudulent within the menaing of Code section

523(a)(2)(B). Moreover, although the plaintiff testified that, at formation of the 1983 agreement, he relied on the debtor's representation that 78 cows were "the actual numbers", the plaintiff also testified that sometime prior to entering into the February 1983 agreement he visited the debtor's farm, counted "50 to 60 cows" in a barn count, and was "satisfied with the numbers." The plaintiff's census indicates that he relied at least as much on his investigation as on the debtor's representation.

■ An emerging standard to determine whether a creditor relied on a written statement materially false, respecting the debtor's financial condition, so as to preclude dischargeability, is to compare the creditor's actual conduct to customs in the industry in light of surrounding circumstances existing at the time. *In re Ardelean, supra.* In Vermont, it is customary for a creditor taking a security interest in cows to reflect the tag numbers of the animals on the security agreement. Although the plaintiff testified that he did not feel this precaution was necessary in that his security interest covered "all substitutions and replacements," the court is not prepared to decide this case on the basis of the plaintiff's selfserving testimony that he was "under the impression that seventy-eight cows were [on the farm]." When the plaintiff made his barn count and was "satisfied with the numbers," he counted, as he testified, less than 78 cows. Thus, the plaintiff either knew that there were not 78 cows on the farm, and chose not to list in the security agreement the tag numbers of such cows as there were on the farm, because such a listing would include less than 78 cows, or the plaintiff, indulging in the fantasy that there were 78 cows on the farm, chose to ignore his own census, which indicated that there were not 78 cows on the farm. Either way, the plaintiff does not meet his burden of proof that he detrimentally relied on the debtor's representation in the security agreement that 78 cows were in fact on the farm and had the plaintiff allegedly so relied, his reliance would have been, on the facts, unreasonable.

■ This court is convinced that there was no intent to deceive on the part of the debtor, and that the plaintiff did not rely on the representations made by the debtor. In sum, the plaintiff has failed to sustain his burden, and the debtor should not be denied his discharge as to his debt to the plaintiff. The complaint should be dismissed and the debtor given "new opportunity in life and a clear field for future effort, unhampered by the presure of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 113–114, 27 L.Ed.2d 124 (1970).

### ORDER

In accordance with the foregoing,

IT IS ORDERED, that the plaintiff's complaint be, and hereby is, DENIED.