**In re Christine I. STONE, Debtor.**

**Stuben P. HADDEN, Plaintiff,**

v.

**Christine I. STONE, Defendant.**

**Bankruptcy No. 84–106.**
**Adv. No. 84–0067.**

United States Bankruptcy Court,
D. Vermont.

Oct. 16, 1984.

Louis J. Testa, Brooklyn, N.Y., for Stuben P. Hadden, a creditor.

W. Averill Brown, Bennington, Vt., for debtor.

CHARLES J. MARRO, Bankruptcy Judge.

This matter is before the Court on the Complaint of Stuben P. Hadden, a creditor, against the debtor, Christine I. Stone, to Determine Dischargeability of Debt.

### FACTS

Christine I. Stone filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on June 14, 1984 and listed in her Schedules, as one of her unsecured creditors, "Stuben P. Hadden" of East Greenbush, New York, in the sum of $7,000.00, for cash 5/83, under a loan agreement. This loan was made under a written agreement dated December 20, 1982, signed by Stuben P. Hadden as lender and Christine I. Stone was borrower, and it recited that the lender was willing to lend to the borrower the sum of $8,000.00 for the down payment in the purchase of certain real estate located on Foster Drive, Bennington, Vt., to be used as a residence. The agreement also provided that in the event the borrower purchased the aforesaid property and used the sum loaned as a down payment on the price, the borrower would execute a promissory note and deliver it to the lender with a second mortgage on the property with the note to have the same date as the date of the closing of the purchase of the property, and the first payment to be made 30 days from such date. On the same date, i.e., December 20, 1982, the debtor did execute and deliver to Steuben P. Hadden, a promissory note payable to his order in the sum of $8,000.00 with interest at the rate of 12% and payable in 48 equal installments of $210.68 commencing with the first installment on January 20, 1983. This note also made provision for late charges and acceleration of payment in the event of default together with reasonable attorneys' fees and other necessary costs and expenses incurred by the holder in the collection of the note. It also recited:

"This note is secured by a second mortgage on real property of the maker located on Foster Drive, Bennington, Vermont."

Hadden did, in fact, upon execution of the loan agreement and of the promissory note by the debtor, lend and deliver to her the sum of $5,000.00, the balance of $3,000.00 which was part of the total of $8,000.00 recited in note being the sum due to Hadden from his sister, Mrs. Patricia Hudson, who, at that time, was living with the debtor. As a matter of fact, Hadden agreed to make the loan only after persistent attempts were made both by debtor and his sister to obtain the money from him, and the loan was made only on condition that the $3,000.00 then owing by Hadden's sister was included in the amount of the note.

The debtor did not execute and deliver to Hadden a second mortgage on the Foster Drive property when the note was executed by her and delivered to him, and she has never, since that date, executed and delivered to him a second mortgage on that property. As a matter of fact, she did negotiate for the purchase of this property but the closing was delayed until May, 1983, for the reason that there were some difficulties with the tenants occupying the premises. The debtor did, however, start the installment payments on the note early in 1983 and did actually make six payments to Hadden of $210.68 each. The actual closing for the purchase of the Foster Drive, Bennington, Vt. property took place

on May 2, 1983 with a purchase price of $45,000.00, a cash payment by the debtor of $4,500.00 and a mortgage to Bennington Cooperative Savings and Loan Association, Inc., for $40,500.00. In addition, the debtor paid legal fees, Vermont Transfer Tax and title insurance amounting to a total of $582.50.

While the debtor and Hadden's sister were living together they had an arrangement whereby the debtor went out to work whereas the sister stayed at home and handled all of the bills of the household making all of the payments. At the time the loan agreement and note were executed Hadden knew that the debtor did not own the property but after the debtor acquired it he did, in fact, make demand at least once for the second mortgage directly of the debtor. Shortly after this demand was made the debtor requested Hadden's sister to make arrangements for the preparation of the second mortgage so that she could sign it and she even suggested that Hadden's sister should get in touch with her attorney for preparation of the mortgage. For some reason or other Hadden's sister put the matter off and the mortgage was never executed. The debtor ceased making payments to Hadden during the summer of 1983 because she had incurred other obligations and could not handle these payments.

At the time that the debtor executed the loan agreement and note she fully intended to give Hadden a second mortgage on the property that she expected to purchase and it was always her intention to do so at least until she filed her petition for relief under the Bankruptcy Code.

The balance due from the debtor to Hadden is $6,735.92 plus interest at 12% per annum from June 20, 1983.

## DISCUSSION

▮ Hadden contends that the debt from the debtor to him is not dischargeable under Section 523(a)(2)(A) which provides, as pertinent to this case, that a discharge does not discharge an individual debtor from any debt for obtaining money by false pretenses, the false representation or actual fraud. A creditor seeking to deny a debtor his discharge as to his particular debt assumes a heavy burden under this section of the Code. He must first bring himself within all of the essential elements of the exception to the discharge contained within § 523(a)(2)(A). *Matter of Forcella* (Bankruptcy M.D.Fla.1983) 27 B.R. 111; *In Re Ayers* (Bankruptcy M.D.Tenn.1982) 25 B.R. 762; *In Re Lambert* (Bankruptcy E.D. Mich.1980) 21 B.R. 23; *In Re Barrup* (Bankruptcy D.Vt.1983) 37 B.R. 697, 699; *In Re Vairo* (Bankruptcy S.D.N.Y.1984) 40 B.R. 776, 779. The creditor must also establish that the debtor was guilty of actual fraud, i.e., fraud involving moral turpitude or intentional wrong. Fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. See 1A Collier's 1634 construing § 17a(2) of the Bankruptcy Act, the forerunner of present Code statute § 523(a)(2)(A). See also *In Re Buttendorf* (Bankruptcy D.Vt.1981) 11 B.R. 558, 561. *In Re Crook* (Bankruptcy D.Me.1981) 13 B.R. 794; *In Re Barrup*, supra.

▮ In the instant case there is a complete absence of any fraud committed by the debtor. Her undisputed testimony, which the Court considers credible, was that she had every intention of giving creditor Hadden a second mortgage on the property purchased. This intention existed when the loan was made and it continued well beyond the closing of the transfer in May, 1983. Her failure to execute and deliver such a mortgage was more a matter of negligence on her part and reliance on Hadden's sister to make arrangements for the preparation of the necessary document. She even made installment payments on the note before she acquired title to the property. This was further evidence of her good faith. In addition, she continued payments until her financial condition caused her to cease.

Lack of performance by the debtor does not establish fraud. In this jurisdiction neither representations of fact that will exist in the future nor mere promises, though false and intended to deceive, af-

ford the basis of actionable fraud. *Woods v. Scott,* 107 Vt. 249, 178 A. 886; *Comstock et al. v. Shannon et al.,* 116 Vt. 245, 250, 73 A.2d 111.

And in *Hunt v. Lewis,* 87 Vt. 528, 531, 90 A. 578 our Supreme Court said:

"An actionable misrepresentation must relate to a present or past state of facts. *Belka et al. v. Adams [Allen]* [82 Vt. 456, 74 Atl. 91] supra. Representations of intention, or promises, having reference merely to the future, constitute no ground of action. An action of deceit does not lie for failure on the part of a promisor to perform a promise made by him to do something in the future, which he does not intend to do and subsequently refuses to do, although the promisee has acted in reliance on such promise to his damage. 1 Jaggard on Torts, 583, 584; Bigelow on Frauds, 11, 12; *Robertson v. Parks,* 76 Md. 118, 24 Atl. 411; *Patterson v. Wright,* 64 Wis. 289, 25 N.W. [10] 11; *Dawe v. Morris,* 149 Mass. 188, 21 N.E. 313, 4 L.R.A. 158, 14 Am.St. Rep. 404. The distinction between a representation that something exists which does not, and a representation, or more properly a promise, that something shall be done thereafter, is obvious."

The Court also observes that creditor Hadden apparently slept on his rights and was guilty of laches. The debtor acquired title to the property on May 2, 1983. Since that date Hadden did no more than to make demand for the second mortgage and took no affirmative action to protect his interest. He could have very well had the necessary document prepared for execution by the debtor, and in the event of her refusal, he could have taken legal action to compel her to carry out her obligation. In lieu thereof he waited until her financial condition had deteriorated to the point that it was necessary for her to file for relief under the Bankruptcy Code and then, on September 4, 1984, almost a year and a half after the debtor acquired title to the property filed a complaint in this Court to determine dischargeability of debt. Unfortunately it is not supported by the evidence and Hadden's cause must, in this proceeding, fail.

## ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED that the Complaint of Stuben P. Hadden against the debtor to Determine Dischargeability, filed September 4, 1984, is DISMISSED with prejudice.