**In re Everett Lee BARRUP d/b/a The Watertown Farm, Debtor.**

**Bankruptcy No. 83–00085.**
**Adv. P. No. 85–0022.**

United States Bankruptcy Court,
D. Vermont.

July 23, 1985.

Gilbert T. Normand, Montpelier, Vt., for debtor.

Deborah T. Bucknam, Hardwick, Vt., for Jonathan Lussier.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

The matters before the court are (1) the motion of Jonathan Lussier (Lussier) for a rehearing of this court's judgment of May 17, 1985 and the debtor's objection to the motion; (2) Lussier's motion for a stay of the May 17th judgment pending appeal; (3) Lussier's motion to find the debtor in contempt, and for attorney's fees; (4) Lussier's complaint for the revocation of the debtor's discharge; (5) the debtor's motion to dismiss Lussier's complaint; (6) the debtor's motion for attorney's fees and costs of suit in defending against Lussier's complaint. The matters came on regularly for hearing, and arguments were heard on June 26th and July 9, 1985. The following facts are established.

## FACTS

The debtor, Everett Lee Barrup, (Barrup) filed for relief under chapter 7 of the Bankruptcy Code (Code) on May 10, 1983. On September 29, 1983 Lussier brought a com-

plaint to determine the dischargeability of a debt, and on November 30, 1983 Lussier's complaint was denied. A discharge of the debtor issued on February 2, 1984. The case was closed on March 27, 1984.

On August 4, 1984 Lussier filed a complaint against Barrup in state court in an effort to recover, from Barrup personally among other defendants, some or all of the claim that was the subject matter of Lussier's dischargeability complaint. On February 28, 1985 Lussier moved to reopen the bankruptcy proceeding and the same day filed a complaint to revoke the discharge of the debtor. The case was reopened by order dated February 28, 1985. Barrup retained counsel to defend in the state court action and in this forum in connection with Lussier's complaint to revoke the discharge of the debtor.

On March 12, 1985 Barrup moved for a contempt judgment against Lussier for violating the debtor's discharge by proceeding against the debtor in state court with respect to a prepetition debt after the debtor's discharge issued. The same day, Barrup also moved to dismiss Lussier's complaint for revocation of the debtor's discharge and prayed for expenses and costs in defending against the complaint. See *Answer to the Complaint* at paragraph 2. On May 17, 1985, 51 B.R. 318, this court found Lussier in contempt of the injunction of Code section 524(a)(2) attending the debtor's discharge. The court awarded Barrup the reasonable costs and expenses he actually incurred in connection with defending in state court. *Memorandum Opinion* at 5 lines 5–7. Lussier appealed the judgment of May 17, 1985 on May 28, 1985.

On June 25, 1985 Lussier filed his motion for contempt and for attorney's fees, alleging that Barrup had engaged in "willfully and knowingly perjuring himself on several occasions in order that he, by fraudulent means, could obtain the discharge ..." At hearing on the contempt motion, Lussier by his attorney and through his witnesses did not establish the substance of his allegations of perjury, false oath or extrinsic

fraud. In specific, the testimony at trial did not establish that any statement in the debtor's petition was inaccurate, nor that any testimony of the debtor in these proceedings was untruthful.

Underlying Lussier's allegations of fraud on the court on the part of Barrup, was Lussier's representations that Barrup had testified in his dischargeability proceeding that he had sold no cows after February 1983, whereas, in fact, Lussier represented, Barrup had sold certain cows prepetition between March 1, 1983 and bankruptcy day. The court has searched the record and has not found Barrup's representation that he sold no cows prepetition after February 1983. In any event, the testimony on the motion for contempt established, merely, that one witness on one occasion saw cows on Barrup's fields after February 1983 and before bankruptcy day. The schedules filed in connection with the petition for relief establish that Barrup left cows standing on his fields when he quit his farm in April, one month before petition day.

On June 28th the Clerk fixed July 9th as the date for the hearing on Lussier's contempt complaint. On July 3rd, Lussier caused to be issued certain subpoenaes to certain witnesses to obtain their testimony at the July 9th hearing. These subpoenaes were never served. The return of service on each subpoena bore the inscription, "I attempted to serve this subpoena upon [the named person] but I could not locate him." No return of service indicated any date or place where the server "attempted to serve this subpoena." The return of service declaration was executed July 9th, the date of the contempt hearing.

At hearing, Lussier called a witness who was present in the courtroom to testify to the content of what one of the subpoenaed but absent witnesses had said in conversation to the witness present, on one or more occasions in April 1983. Lussier's purpose in seeking to introduce the extrajudicial conversation of the absent witness was to prove the truth of Lussier's allegations of perjury and fraud on the court as contained

in his pleadings, motions, and memoranda of law. Counsel for Barrup timely objected to the introduction, by the present witness, of the comments of the absent witness as inadmissible hearsay. The court sustained the objection and excluded the testimony. Lussier, by counsel, took exception to the ruling on the ground that the absence from the courtroom of the subpoenaed witness caused such witness to be unavailable under Rule 804(a) of the Federal Rules of Evidence and that the testimony as to the content of the comments of the absent witness should be allowed under Rule 804(b) as a statement against interest. The offer of proof was that the purported comments of the absent witness would establish civil liability in the absent witness under various state statutes; therefore, the reiteration by the present witness of the comments of the absent witness obtained the quality of reliability of a statement against interest.

## DISCUSSION

■ The motion for a rehearing of the May 17, 1985 memorandum opinion is denied. Boiled down, Lussier's argument is that Barrup testified untruthfully in 1983 in connection with the matters at issue in the dischargeability proceeding, *In re Barrup*, 37 B.R. 697 (Bankr.D.Vt.1983); *ergo* Lussier should not be held in contempt for violating, in 1984, Barrup's discharge. The argument has no merit. The matter of Lussier's 1984 contempt, and the matter of Barrup's 1983 testimony, are distinct, separate events requiring several treatment in accordance with the Code. The court treated Barrup's remedy against Lussier under section 524(a)(2) on May 17, 1985. Today the court treats Lussier's remedy against Barrup under Code section 727(d) in its disposition of the complaint to revoke Barrup's discharge. In short, Lussier has advanced no ground that supports a rehearing of the matters at issue on May 17th; the concerns of the motion for rehearing properly pertain to the complaint for revocation of discharge.

## STAY PENDING APPEAL

■ Bankruptcy Rule 8005 provides that the bankruptcy court has discretionary authority to stay a judgment pending appeal "on such terms as will protect the rights of all parties in interest". In ruling on a motion for a stay pending appeal in a civil case, the court tests the motion with the standards applicable to a request for temporary injunctive relief. *See generally* Fed.R.Civ.Pro. 62(c); *Highland Park v. Train*, 374 F.Supp. 758, *aff'd*, 519 F.2d 681 (7th Cir.1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1941, 47 L.Ed.2d 337 (1976); *Reserve Mining Co. v. United States*, 498 F.2d 1073 (8th Cir.1974). The standards applicable require denial of a motion for a stay of judgment pending appeal unless the movant establishes (1) that he is likely to succeed on the merits of the appeal; (2) that, unless the stay is granted, he will suffer irreparable injury; (3) that the granting of a stay will occasion no substantial loss to other parties in interest; and (4) that the stay will not do harm to the public interest.

At hearing, Lussier, by his attorney, did not establish that he would suffer irreparable injury were no stay of the May 17th judgment to issue. He also did not establish that he is likely to succeed on the merits of his appeal. In any event, this court has determined that Lussier has little chance of success with respect to his appeal of the May 17th judgment. Therefore, the motion for a stay of the May 17th judgment is denied.

## REVOCATION OF DISCHARGE

Code sections 727(d) and (e) govern proceedings to revoke a debtor's discharge. Section 727(d) permits the court to revoke a discharge already granted. In relevant part, section 727(d) provides,

> (d) on request of ... a creditor ... the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of

such fraud until after the granting of such discharge.

In relevant part, section 727(e) provides,

> (e) ... a creditor may request a revocation of a discharge
>
> (1) under subsection (d)(1) of this section, within one year after such discharge was granted.

■ The court must strictly construe the statute governing revocation of discharge. *In re Lyons*, 23 B.R. 123 (Bankr.E.D.Va. 1982). Section 727(e)(1) is not a mere statute of limitations, but an essential prerequisite to the proceeding. *In re Santos*, 24 B.R. 688 (Bankr.D.R.I.1982). The year begins to run from the date of the order of discharge and a creditor must request revocation of a discharge within one year after such discharge was granted in the event fraud is discovered after the granting of such discharge as specified in section 727(d)(1). Collier on Bankruptcy (15th ed.) 4:727.16 at 727–95 (1985).

■ In the instant case, Lussier's complaint to revoke Barrup's discharge was filed one year and 26 days after Barrup's discharge was granted. As Lussier did not file the instant complaint within the statutory time frame, the court is without jurisdiction to hear the complaint.

Bankruptcy Rule 9024 substantiates that the court may not hear the instant complaint. The Rule provides that Rule 60 of the Federal Rules applies in cases under the Code, "except that ... a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by section 727(e) of the Code ..." As the Advisory Committee on the Rules of Bankruptcy procedure has stated,

> [p]ursuant to section 727(e) of the Code, a complaint to revoke a discharge must be filed within one year of the entry of the discharge ... [T]his rule make[s] it clear that the time period established by section 727(e) of the Code may not be circumvented ...

*See* House Report No. 595, 95th Cong., 1st Sess. 385 (1977); Senate Report 989, 95th Cong., 2d Sess. 99 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787.

### HEARSAY

Rule 804(a) of the Federal Rules of Evidence authorizes the admission of hearsay statements of an unavailable declarant. *U.S. v. Pelton*, 578 F.2d 701 (8th Cir.1978), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422. " 'Unavailability as a witness' includes situations in which the declarant ... is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means."

■ Whether a witness is unavailable is not to be decided on the basis of the physical absence from the courtroom of the witness on the date of hearing, but rather on the basis of the relationship and disposition of the witness to the party calling him. The test is generally whether the witness is susceptible of being compelled to attend, not whether his presence was, in fact, procured on a particular occasion. In the instant case, the return of service indicates the absent witness is domiciled within the jurisdiction of this court. It does not appear of record, nor has it been suggested by any party here, that the witness is absent from the jurisdiction. There is nothing to indicate that any means other than the issuance of the subpoena was pursued to obtain the attendance of the absent witness.

The officer's return asserts that he attempted to serve the subpoena upon the witness but he could not locate him. He does not detail the attempt made. He received the subpoena on July 3, 1985 and his return is dated July 9, 1985. During the six days between receipt and return it would seem that he could have located the witness had he exerted his best efforts. A fair inference is there he did not try very hard to serve the subpoena.

In sum, the witness was not unavailable as that term is used in the Rule. For the reason that the absent witness was not unavailable, no statement against interest, or other hearsay statement requiring una-

vailability of the declarant as a precondition to admissibility of the statement, is admissible into evidence under Rule 804(b). The testimony of the present witness as to the comments of the absent witness was excluded properly under Rule 804.

## CONTEMPT

 The fact that Barrup may have dealt fraudulently with a creditor, *i.e.* Lussier, does not, without more, indicate that Barrup has committed fraud on the court for the purpose of obtaining a discharge. In any event, this court has found that Lussier did not prove fraudulent conduct as to him on the part of Barrup. *In re Barrup*, 37 B.R. 697 (Bankr.D.Vt.1983). Moreover, at hearing on the contempt motion, Lussier did not prove extrinsic fraud on the part of Barrup in connection with these proceedings. One witness testified that he saw unidentified cows on Barrup's fields in the spring of 1983, and that at Barrup's request he caused a third party to transport several unidentified cows away from Barrup's farm to the farm of another. A second witness called by Lussier testified that he saw cows on the farm of another which he believed came from Barrup's farm at Barrup's request in the spring of 1983. Barrup himself indicated that he left cows on his farm in April 1983 when he quit his farm. Schedule A–2, item # 1, and Statement of Financial Affairs, item 1(b). However, Barrup whose testimony was frank, direct and credible, denied selling any cows at any time relevant to this proceeding for contempt, and denied transporting, causing to be transported, or requesting transport for, any cows as testified to by Lussier's two witnesses.

Three other witnesses Lussier had subpoenaed did not attend the hearing. Other persons including a veterinarian, described by the two witnesses for Lussier as having relevant personal knowledge of the evidence at issue, were not present, and it was not suggested that they had been subpoenaed or asked to appear at hearing.

Clearly, the fact that a witness saw cows on Barrup's farm fields on one occasion after February 1983 does not establish that Barrup sold any cows after February 1983. In fact, this witness testified that he did not know whether Barrup had sold any cows at any relevant time. Moreover, the fact that a witness believed that Barrup caused cows to be delivered to the farm of another does not establish that Barrup caused any cows to be delivered to the farm of another. In fact, this witness testified that he had no personal knowledge that Barrup had caused any cows to be transported at any relevant time from his farm to the farm of another. In addition, neither of Lussier's two witnesses personally identified or had personal knowledge of the ownership of any cow or cows they spoke about. In short, it was not shown at hearing (1) assuming *arguendo* that Barrup had testified that he sold no cows after February 1983, that in fact Barrup had perjured himself when he so testified; or (2) that Barrup made a false oath when he listed no cows as personal property assets on the schedule of property accompanying his petition for relief; or (3) that Barrup committed fraud on the court in connection with his personal bankruptcy.

For the foregoing reasons, the motion for a contempt judgment against the debtor must be denied.

## COSTS AND EXPENSES

 Lussier's motion for attorney's fees fails because his complaint may not be heard, his contempt motion must be denied, and there is no merit to his motions for rehearing or stay pending appeal.

 Barrup has requested his reasonable costs and expenses actually incurred in defending the complaint to revoke the discharge. The court reasons that reasonable costs and expenses actually incurred by the debtor defending this complaint should be awarded, for the reasons which follow.

Code section 727(e)(1) states that a creditor "may request" to revoke a discharge under section 727(d)(1) "within one year after such discharge was granted". The

phrase "may request" means "may be filed". *See* Bankruptcy Rule 9024. The body of case law on revocation of discharge establishes that section 727(e)(1) and Bankruptcy Rule 9024 mean what they say: that the complaint must be filed within one year of the issuance of the discharge. *See, e.g., Matter of Morgan,* 5 Collier Bankr.Case.2d 1325 (7th Cir.1981); *Solove v. Chase Manhattan Bank,* 388 F.2d 874 (5th Cir.1968); authorities cited *ante* at "Revocation of Discharge". Nevertheless, Lussier prosecuted his complaint without any reasonable hope of prevailing on the merits for the reason that he filed the complaint outside the time allowed by Code section 727(e), and "a complaint to revoke a discharge in a chapter 7 proceeding may be filed only within the time allowed by section 727(e) of the Code." Bankruptcy Rule 9024. Prosecution of this suit absent any reasonable prospect of success makes appropriate an award of reasonable expenses and fees actually incurred by the debtor in defending against the complaint, as prayed for by the debtor.

Barrup's attorney has provided the court with a detailed itemization of fees, costs and expenses incurred through April 9, 1985. The court has reviewed the documentation of fees and expenses submitted by Barrup's counsel, and has taken judicial notice of the fact that fees and expenses incurred in connection with the June 26th hearing are not reflected in the accounting for the period ending April 9, 1985.

The hourly rate of Barrup's attorney is $60 per hour which the court considers most reasonable. The court considers 7 hours a reasonable time to prepare for and attend the June 26th hearing. Seven hours at $60 per hour is $420.00. In addition, and with reference to the itemization of Barrup's counsel, the court has determined that the amount of $400.00 is compensable in connection with the complaint to revoke the discharge of the debtor. Thus, the court determines that, in addition to the attorney's fee of $850.00 allowed the debtor by Judgment entered May 17, 1985, Lussier shall pay to the debtor's attorney the additional sum of $820.00.