**In re Mark A. HICKS and Anita M. Hicks, Debtors.**

**Bankruptcy No. 86–1910 (13).**

United States Bankruptcy Court, N.D. Alabama.

Sept. 29, 1987.

Harry P. Long, Anniston, Ala., for movant.

Thomas M. Semmes, Anniston, Ala., for debtor.

---

## FINDINGS AND CONCLUSIONS

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

This is a chapter 13 bankruptcy case commenced March 10, 1986. The required hearing on confirmation of the debtors' plan[1] was held July 22, 1986, but was inconclusive because of an uncertainty as to how a claim for an arrearage of $1,003.79 on a home-mortgage debt was to be paid. An amendment to the plan was filed September 22, 1986, providing that the claim be paid through the trustee, but the problem was not resolved for there was then an insufficiency of funds to be paid to the trustee to accommodate all requirements of the plan. Finally, the debtors' proposed payments to the trustee were increased, and an order confirming the modified plan was entered on November 7, 1986, with only the initial confirmation hearing having been held.

On March 12, 1987, counsel for an individual named Dudley Miller (hereinafter referred to as Miller) filed in this case a motion which requests that the Court: (1) revoke the order of confirmation; (2) deny confirmation of any modified plan thereafter proposed; and (3) dismiss the case or convert it to one under chapter 7. An evidentiary hearing was held on the motion April 14, 1987, and the Court is called upon to determine whether confirmation of the plan was obtained by fraud of the debtors as set forth in the motion.

*Findings of Fact —*

From the evidence presented, the Court finds the relevant facts, as follows:

1. On or near October 1, 1986, Miller and debtor Mark Hicks (hereinafter referred to as Hicks) entered into a written agreement for Hicks to buy from Miller 499 shares of capital stock of a corporation having the name "Double Dutch Ice Cream, Inc." (hereinafter referred to as the corporation);

2. The remaining capital stock in the corporation, 501 shares, was owned by a local attorney not involved with this case,

except for having drafted the sell-buy agreement between Miller and Hicks;

3. Miller conducted the only business of the corporation which was the operation of a retail ice cream shop at the Quintard Mall in Oxford, Alabama;

4. The agreement provided for Miller to pay the obligations associated with the business for rent, leases, utilities, taxes, and other expenses through September, 1986;

5. Under the agreement Hicks was to pay Miller $3,500 and assumed and was to pay certain lease payments, four notes to banks for $2,500.00 each, and the payments for an ice cream machine;

6. At the time of the agreement or shortly thereafter, the debtors undertook the operation of the ice cream shop but the endeavor failed in a couple of months for lack of profits and Hicks defaulted on the agreement; and

7. Neither Hicks nor his wife informed their attorney, the chapter 13 trustee, or the Court of any of these events until after the chapter 13 plan had been confirmed.

Whether Hicks or his wife informed Miller during the negotiation of the agreement of the pendency of the debtors' chapter 13 bankruptcy case cannot be determined because of a conflict in the testimony of the witnesses.

*Conclusions by the Court —*

Section 1330 of title 11, United States Code provides as follows:

§ 1330. Revocation of an order of confirmation.

(a) On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

(b) If the court revokes an order of confirmation under subsection (a) of this section, the court shall dispose of the case under section 1307 of this title, unless, within the time fixed by the court,

---

1. 11 U.S.C. § 1324.

the debtor proposes and the court confirms a modification of the plan under section 1329 of this title.

Under section 1307 referred to, a chapter 13 case may be converted to a chapter 7 liquidation case or a chapter 11 reorganization case or it may be dismissed out of court.

There is no question but that the motion filed on March 12, 1987, was within 180 days after entry of confirmation of the debtors' plan and was, therefore, timely. Two immediate questions are presented by the motion: whether Miller is "a party in interest" and whether the failure of the debtors to inform the trustee and the Court of the agreement made by Hicks with Miller prior to confirmation of the plan on November 7, 1986, amounted to procuring the order of confirmation "by fraud." Other issues raised by the prayer for relief are contingent and prospective.

■ In the opinion of the Court, Miller is not "a party in interest" so as to have standing to raise this issue and does not qualify under the wording of the statute for seeking revocation of the order of confirmation on the ground that the order was procured by fraud. Miller is not a prepetition creditor. He is a postpetition creditor but not of the strictly limited classes who may have their claims allowed in this case.[2] Whatever Miller has against Hicks arises from breach of the October 1, 1986, contract, entered into more than six months after the commencement of this case. Obviously Miller's claim is not one provided for by the chapter 13 plan and will not be

one affected by any discharge granted under section 1328 of the bankruptcy statute. The Court is unable to discern any interest of Miller which is impaired by the order of confirmation.

The term "party in interest" is not one of those defined or explained in title 11, United States Code,[3] and its meaning is not settled. If, however, the motion is considered as sufficiently presented to the Court, it cannot be found to be well taken as to its substance.

The motion, while asserting "fraud," is found to be stating "bad faith." A chapter 13 plan does not meet the confirmation test of title 11, United States Code, section 1325(a)(3) unless it "has been proposed in good faith;" thus, the motion attempts to relitigate the propriety of the confirmation order rather than to have it revoked for "fraud."[4]

■ In relation to the confirmation of the debtors' plan, the conduct of Hicks was that he did not inform the trustee or the Court of the substantial additional financial commitments undertaken by him in the October 1, 1986, contract with Miller or of the potential for gain or loss which he then had in the ice cream shop venture. It is not farfetched to conclude that disclosure of those circumstances would be part of the mix of facts which the Court could appropriately consider in determining feasibility and good faith in the confirmation process. The failure to disclose those circumstances could be bad faith or, conversely, an absence of good faith.[5] it may be that Hicks

2. *See* 11 U.S.C. § 1305(a).

3. *Cf.* 11 U.S.C. § 101.

4. The right to litigate the general appropriateness of the order of confirmation is limited to a party in interest who takes a timely appeal from the order.

5. In Black's Law Dictionary, at 623–24 (5 ed. 1979), "good faith" is defined as follows:
   Good faith is an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage, and an individual's personal good faith is concept of

his own mind and inner spirit and, therefore, may not conclusively be determined by his protestations alone. Honesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry. An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit or belief of facts which render transaction unconscientious. In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. (citations omitted.)

did not understand that he had a duty to disclose fully all of the facts making up his financial circumstances, as could be indicated by the fact that he did not inform his attorney; but that fact could have been part of an effort to hide knowledge of his new venture. Either way, the movant, Miller, would have to establish fraud, which goes beyond bad faith.

From the absence of any substantial number of published opinions on the meaning of "fraud" in section 1330(a), it appears that this issue has been practically unlitigated and unexplored. In *In re Edwards*, 15 B.C.D. 270 (Bankr.D.Ct.1986), however, Judge Shiff has set forth an excellent explanation of what must be shown for relief under 1330(a):

> Fraud under Sec. 1330(a) is not defined, the legislative history is silent as to the meaning of the term, and there are no judicial decisions which shed light on its interpretation. However, Code Sec. 1144 is essentially identical to Sec. 1330(a), so that decisions which discuss fraud under Sect. 1144 are helpful in illuminating its meaning in the instant proceeding.

In *In re Hertz*, 38 B.R. 215, 220 (Bankr. S.D.N.Y.1984), it was held that "revocation under Sec. 1144 requires a showing of actual fraud." In *Matter of Braten Apparel Corp.*, a proceeding involving a determination of fraud in a Chapter XI case under Bankruptcy Act Sec. 386, the predecessor to Sec. 1144, the court stated, "[w]hat is clear is that [the creditor] has the burden of proving 'fraud' and that fraud requires actual fraudulent intent." *Matter of Braten Apparel Corp.*, 21 B.R. 239, 256 (Bankr.S.D.N.Y.1982), *aff'd*, 26 B.R. 1009 (S.D.N.Y.), *aff'd mem.*, 742 F.2d 1435 (2d Cir.1983). As the *Braten* bankruptcy court went on to state, "But Congress provided no dictionary for the word 'fraud' and left it to the development of judicial gloss to guide delineation of types of conduct generally understood to constitute fraud." *Id.* 11 U.S.C. Sec. 523(a)(2)(A) also provides guidance for determining the prerequisites necessary for the demonstration of fraud under Sec. 1330(a) since actual fraud is included as a ground for exception to discharge under that section. Section 523(a)(2)(A) was enacted to codify case law as expressed in *Neal v. Clark*, 95 U.S. 705, 24 L.Ed. 586 (1887) in which "fraud" was interpreted to mean actual or positive fraud rather than fraud implied by law. 124 Cong.Rec. S 17,412–13 (daily ed. Lct. 6, 1978), and such fraud involves moral turpitude or intentional wrong for which bad faith or immorality can be imputed. *In re Stone*, 43 B.R. 377, 379 (Bankr.D.Vt.1984).

As this court stated in *In re Fosco*, 14 B.R. 918 (Bankr.D.Conn.1981), the plaintiff must prove the following five elements to sustain an objection to the dischargeability of a debt under Sec. 523(a)(2)(A):

(1) the debtor made representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Id.* at 920. *See In re Houtman*, 568 F.2d 651, 655 (9th Cir.1978); *In re Hunt*, 30 B.R. 425, 435 (M.D.Tenn.1983); 37 Am. Jur.2d. *Fraud & Deceit*, Sec. 12 (2d ed. 1968). A showing of reckless indifference to the truth is sufficient to demonstrate actual knowledge, *Morimura v. Taback*, 279 U.S. 24, 33, 49 S.Ct. 212, 215, 73 L.Ed. 586 (1928) and the requisite intent to deceive. *In re Houtman*, *supra*, 568 F.2d at 656; *In re Hospelhorn*, 18 B.R. 395, 398 (Bankr.S.D. Ohio 1981).

In the context of this proceeding, I conclude that the plaintiff must prove each of the following five elements under Sec. 1330(a) in order to sustain the burden of proving that the debtor obtained a confirmation of her plan by fraud:

First, that the debtor made a representation regarding her compliance with Code Sec. 1325 which was materially false;

Second, that the representation was either known by the debtor to be false, or

was made without belief in its truth, or was made with reckless disregard for the truth;

Third, that the representation was made to induce the court to rely upon it;

Fourth, the court did rely upon it; and

Fifth, that as a consequence of such reliance, the court entered the confirmation order.

. . . .

... [A]s the court in *Connolly v. Gishwiller*, 162 F.2d 428, 433 (7th Cir.1947) observed,

> There is no general rule for determining what facts will constitute fraud, but it is to be found or not according to the special facts of each particular case. It is rarely susceptible of direct proof, but must ordinarily be established by circumstantial evidence and legitimate inferences arising therefrom, which, taken as a whole, will show the fraudulent intent or purpose with which the party acted.

Likewise, the *Braten* court stated:

> Fraud, by its very nature, is difficult to prove, as it is not readily susceptible of ocular observation. It is, by its nature, covert and surreptitious. Indeed, intent is rarely the object of direct proof, and must be inferred from the evidence in the case dealing with the transaction in question. The court, upon its review of the evidence, must determine whether the circumstances, when all are taken together, are consistent with an honest intent. (citations omitted).

*Matter of Braten Apparel Corp., supra,* 26 B.R. at 256. So while fraud may be proved by circumstantial evidence, it is equally clear that fraud is never to be presumed. *In re Isidor Klein, Inc.,* 22 F.2d 906, 908 (2d. Cir.1927); *Alaimo v. Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982), *citing Creelman v. Rogowski*, 152 Conn. 382, 384, 207 A.2d 272 (1965); *see Lopinto v. Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981), and if honest intent can be inferred, fraud cannot be found. *In re Hunt,* 30 B.R. 425, 436 (M.D.Tenn.1983). (footnotes omitted).

Neither Miller's pleading nor proof goes far enough to establish the substantive fraud on which relief under section 1330(a) rests.

An order denying Miller's motion will be entered.